459 P.2d 83

**STATE of Arizona, Appellee,**
**v.**
**James ZAKHAR, Appellant.**
**No. 1909.**

Supreme Court of Arizona.

In Banc.

Sept. 26, 1969.

Gary Nelson, Atty. Gen., Rod McDougall, Asst. Atty. Gen., and Moise Berger, County Atty., Maricopa County, for appellee.

William H. (Rod) Wood, Phoenix, for appellant.

UDALL, Chief Justice:

Defendant, James Zakhar, was charged, in four counts, with kidnapping, with intent to commit rape, lewd and lascivious acts, attempted second degree rape, and aggravated assault, in violation of A.R.S. 13–492, subsec. A, 13–652, 13–611, subsec. B, and 13–245 respectively. A jury found him guilty of the first two offenses and not guilty of the last two.

The 17-year-old complaining witness testified that while she was walking down the street in northwest Phoenix one evening, defendant stopped his car, struck up a conversation with her, and beguiled her into taking a ride with him. After driving around for a while he stopped his car on a church parking lot where he forced her to commit fellatio upon him. When she managed to get out of the car he jumped

out on top of her and then forcibly taking hold of her by her mouth and neck he pulled her across the lawn and around the church, where he got her on the ground, lay on top of her, simulated the sex act, and tried to remove her shorts for the purpose of having sexual intercourse with her.

The complaining witness' testimony was corroborated by a housewife living close by. She testified that she heard a commotion outside, looked out of her window to an area illuminated by a flood light and saw a man dragging another person with him; that she couldn't be sure the person being pulled was a female, but that that person was "whimpering"; that she went outside and a voice coming from near the ground said "Please help me"; that when she went back inside to call the police, the man fled in his car and the girl ran inside the house. The housewife could not identify defendant and knew only that she had seen a blonde man. While waiting for the police the housewife observed that the girl was hysterical and had scratches on her back and sides. She also testified the girl went into the bathroom and started vomiting. While her clothes were not torn or unfastened, defendant had not had more than a few seconds on the ground with her before the housewife interrupted his actions.

The girl admitted lying to her mother in telling her that she was going to visit a girlfriend. (She was on her way to see her boy friend.) She admitted lying to the police. (She told them that she had been forced into the car at knifepoint.) While there may be some inconsistencies in her story, her credibility has been resolved by the verdict of the jury and the evidence is adequate to support the verdict.

On appeal, defendant's principal argument is that the two convictions must be set aside because they are inconsistent with the two acquittals. He argues that acquittal of the assault charge requires the conclusion that everything he did to the complaining witness was done with her consent, so that she was an accomplice to the lewd and lascivious acts, and since her testimony was not corroborated that conviction must fall. He also argues that acquittal on the charge of attempted rape requires the conclusion that the kidnapping, if any, could not have been done with intent to rape, and that conviction must fall. In support of his position, he cites State v. Fling, 69 Ariz. 94, 210 P.2d 221 (1949) and State v. Laney, 78 Ariz. 19, 274 P.2d 838 (1954).

■■ Because of Arizona's statutory definitions of "assault", "attempt", and "intent", it is possible to reconcile the four verdicts in this case. However, we prefer to overrule Fling and Laney, supra, and thus bring Arizona into line with the overwhelming weight of authority. The cases on this question, gathered in 18 A.L.R.3rd, 259, show that in most jurisdictions the rule is that consistency between the verdicts on the several counts of an indictment is unnecessary.

The leading case on the subject is Dunn v. United States (1932), 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, in which Justice Holmes said:

" 'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' "

It is well-known that in the privacy of the jury room, instructions are not always understood and followed. Compromises are made. The jury in the instant case could have found defendant guilty on two counts and at the same time decided that two convictions were enough and that he should be acquitted of the other two counts.

If leniency or compromise led the jury to determine that they should acquit defendant on the charge of assault, then it is

obvious they did not intend the acquittal to mean that the prosecuting witness consented to the indecencies that were committed against her. Had the jury thought that its exercise of mercy would provide defendant with a basis for claiming that he could not be sentenced for the crimes of which he was found guilty, it is quite possible that there would have been guilty verdicts on all four charges.

Defendant also argues that he was unduly restricted by the trial court in his attempt to show previous sexual misconduct on the part of the complaining witness. Such proof, says defendant, would have tended to indicate that the girl's role was that of a consenting partner in the crimes, thus making her an accomplice. If she were an accomplice then the conviction must fall for lack of corroboration since A.R.S. 13–136 requires evidence of defendant's connection with the crime, over and above the testimony of the victim.

■ The trial court quite properly refused to allow such evidence for the purpose of showing consent to the charge of attempted rape because the rape alleged to have been attempted did not require lack of consent. However, the court allowed defendant considerable latitude in trying to develop the victim's probable consent as a defense to the charge of lewd and lascivious conduct. Defendant's difficulties arose, not from restrictions on his questions, but from his inability to get the desired answers to the questions which he was allowed to ask. It is true that the court refused to allow any questions about the girl's sexual activities subsequent to the date of the crimes with which defendant was charged. The court's ruling was proper. Such acts would not be relevant. Only prior acts would suggest consent. Defendant was permitted to ask the victim whether she ever "spent the night" with her boyfriend or "stayed with him" in his house. Her answer was an unequivocal "No." The same answer was given to a question as to whether she had "spent any length of time" living with him.

Out of the hearing of the jury, counsel told the court that her boyfriend would testify that he "took part in oral activities with her", that she suffered from an infection in one ovary which embarrassed her and discouraged amorous activities with him, and that because of this, she preferred to satisfy his sexual urges by fellating him. The court then permitted the girl to be cross-examined concerning these matters and she flatly denied both the oral sexual activity and the existence of any odor emitted from her vagina.

Defense counsel then called her boyfriend to the stand, and questioned him at length about his sexual relations with her. He denied having had intercourse with her prior to the alleged crimes of the defendant. He denied engaging in oral sex with the girl, but admitted that he bragged to others that he had. Counsel succeeded in getting him to admit making detailed statements about having engaged in two-way oral sexual activities with the complaining witness. If the trial court erred, it was in allowing too much freedom to defense counsel in this area. The boyfriend explained his prior out-of-court statements about his sexual activities with the girl, by admitting that "I like to talk," and by the fact that before making the statements he had drunk a pint of vodka and was "kind of drunk." Most of counsel's questions, however, were not about what the boy and girl did, but about what the boy had told a witness that he had done. While the boy admitted the conversation, in which he had made extravagant claims of sexual misconduct with the girl, there is not a single direct statement or admission in the record that the conversation was true. When asked whether the statements which he had made were true, he answered: "It's not true, truly accurate, no." When asked in what way they were inaccurate, he answered: "It doesn't sound like all the things I had said, but basically *it was what I was saying.*" Later when counsel again got around to asking the boy whether he had actually taught the

girl "to do everything in bed", the boy answered "No."

Thus there was a complete lack of competent evidence that the complaining witness had previously had sexual relations with her boyfriend; therefore, there was no ground for an inference that she consented to fellate the defendant and was in fact an accomplice in that crime. Despite this lack of evidence, the court gave defendant the benefit of the doubt and submitted to the jury the issue of whether she was an accomplice. The court instructed that if she were, they must not convict without independent corroborating evidence. No objection was made to the content of the instructions. We, therefore, are of the opinion that the guilty verdicts must be affirmed.

Judgment affirmed.

LOCKWOOD, V. C. J., and STRUCK-MEYER, McFARLAND, and HAYS, JJ., concur.