498 P.2d 547

STATE of Arizona, Appellee,

v.

Stanley SERRANO, Appellant.

No. 1 CA–CR 323.

Court of Appeals of Arizona,
Division 1,
Department A.

July 11, 1972.

Gary K. Nelson, Atty. Gen., by William P. Dixon and Jack McCormick, Asst. Attys. Gen., Phoenix, for appellee.

W. Edward Morgan, Tucson, for appellant.

CASE, Judge.

This is an appeal by the defendant, Stanley Serrano, from a conviction for possession of marijuana and from a prison sentence of from three to ten years.

The facts, viewed in a light most favorable to sustaining the conviction, are as follows. On 19 January 1970 several narcotics agents, armed with a search warrant, entered a two-story residence in the City of Flagstaff, Arizona. At the time of entry, there were approximately 30 to 40 people in the residence. The defendant was among a group of people upstairs while the majority of the people were downstairs. After conducting a search and questioning the occupants, the officers released all but 11 people. The defendant was among those released.

The defendant had arrived at the premises wearing a jacket and had, some time prior to the raid, deposited the jacket downstairs. When released, the defendant left without the jacket. During the investigation, the officers found defendant's jacket on the dining room floor and inquired as to the ownership. They received no response.

The officers searched the jacket and found a baggie of marijuana in the left pocket, together with a package of cigarette papers and two sets of keys in the right pocket. One set of keys was to a Volkswagen van and the other set fit a dormitory room at Northern Arizona University. The officers linked the keys and jacket to the defendant and proceeded to the University where defendant was arrested. The defendant was searched at the time of his arrest but no trace of marijuana was found.

The issue dispositive of this appeal is whether the trial court committed reversible error by failing to grant defendant's motions for mistrial founded upon the prejudicial remarks of the county attorney in his opening and closing statements and upon the prejudicial testimony elicited from the narcotics officers. We would answer in the affirmative.

█ The standard for determining prejudicial error was enunciated by the U. S. Supreme Court in Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967), and followed by the California Supreme Court in People v. Haston, 69 Cal.2d 233, 70 Cal.Rptr. 419, 432, 444 P.2d 91, 104 (1968). The Court, in reversing a conviction for robbery and kidnap, stated:

"Since the error here in question is of federal constitutional dimension, it is clear that the assessment of prejudice must proceed in light of the standard enunciated in Chapman v. State of California, [supra, additional citation omitted]. That standard 'requires reversal if, upon an examination of the entire record, it appears reasonably possible that the error might have materially influenced the jury in arriving at its verdict, and the error must be considered harmless if the likelihood of material influence is not within the realm of reasonable possibility.' (citation omitted)."

In determining whether the error in the instant case conforms to the standards of Chapman, supra, we need only briefly review the conduct of defendant's trial.

The record indicates that in conference prior to trial there was a discussion between counsel and the judge regarding proposed testimony of prosecution witnesses which might infer prior surveillance of

defendant for suspected criminal misconduct. The discussion is revealing.

"MR. MANGUM [attorney for defendant]: Well, along the same area, Judge, apparently these narcotics officers have an idea that Stanley was involved pretty heavily in the drugs situation. I'd certainly object to any reference, even by innuendo, that this is so. The only attack that could be made on his character would be proof of a felony conviction, and suspicion of activities that might be a misdemeanor for all we know would certainly be improper for the State even to suggest.

THE COURT: I agree. This isn't a case where someone is being followed or observed who is suspect and there is some problem in trying to explain to the jury why he was singled out. He was found at this particular house where apparently marijuana was being smoked. That is why he was arrested, not because of any suspicions that they had as to prior activities.

So *I do think it would be a mistrial for* agents to indicate that this man was a suspect, you know, prior to this particular situation. I don't think it is material to this case.

MR. FLICK [deputy county attorney]: Well, I would agree with that . . ."
(emphasis ours)

In addition, defense counsel stipulated to defendant's ownership of the jacket.

Thereafter, the jury was selected and the prosecution made its opening statement. In what appears to be complete disregard of the pre-trial conference, the county attorney asserted that the prosecution would prove defendant's ownership of the automobile. He stated as follows:

"As to whether or not it was his vehicle that the key fit, we will show you that Agent Hammarstrom has known the defendant for almost a year and a half, knew him in Nogales, Arizona, knew when he bought this vehicle, knows that it is his car. I don't think there is going to be any question about that. *This is not the first time that these officers have seen Stanley Serrano.*" (emphasis ours)

In addition, Agent Hammarstrom was identified as a narcotics agent.

After the county attorney completed his opening statement and during a recess, defense counsel made a motion for a mistrial, which motion was later denied. He argued that the prosecution's remarks were clearly prejudicial and gave rise to an inference that defendant was under surveillance for criminal misconduct not connected to the instant charge. He further argued that any testimony related to surveillance of the defendant would be additional grounds for mistrial and would be objected to. Defense counsel again stipulated as to the ownership of the jacket and keys and, in fact, stated this to the jury.

Thereafter, the prosecution proceeded with its case in chief. Agent Hammarstrom was called to the stand and questioned about the jacket, prior observance of the jacket on defendant and the agent's prior acquaintance with the defendant. Agent Maskell, another arresting officer, testified to substantially the same matters. The prosecution then called an additional officer who testified in part:

"Q. Do you recognize it by the kind of jacket it is or its color or anything else?

A. Yes, I have seen it before.

Q. How many times have you seen it before?

A. Approximately five times.

Q. Have you ever seen it on the defendant?

A. Yes, I have.

Q. Whereabouts?

A. I have seen it on the defendant on a Thursday prior to the arrest at approximately 12:00 noon. Agent Hammarstrom, Agent Maskell and myself were departing campus at the time to go to lunch, and Agent Hammarstrom pointed out the vehicle to me at the time which

was right next to us and that is when I was first made acquainted with the defendant.

Q. Was he wearing that coat at that time?

A. Yes, he was.

\* \* \* \* \* \*

Q. Is that coat identical to the one you have seen Mr. Serrano wearing on five previous occasions?

A. Yes, I would say it is identical."

Defense counsel objected to this testimony. He did so out of the presence of the jury, stating he did not wish to emphasize the testimony by continually objecting.

 It seems blatantly obvious that the county attorney's opening comments, coupled with the testimony of the three officers, conforms to the standards of prejudicial error as set out in Chapman, supra. The county attorney deliberately elicited testimony from the witnesses which established identification of the jacket by inferring surveillance of the defendant, notwithstanding he had agreed in chambers that he would refrain from such inferences.

In light of defense counsel's prior stipulations, there appears to be no justification for the testimony of the three officers relating to prior knowledge and observance of the defendant. Such testimony could only serve to reinforce and emphasize the opening remarks of the prosecution and, in our opinion, the statements and testimony taken together were highly prejudicial to the defendant and thereby resulted in a denial of due process which entitles defendant to a fair and impartial trial.

The appellee argues that the testimony had probative value which outweighs the slight prejudicial effect. They agree that the opening statements were incorrect but urge that they were not fatal. We disagree. Evidence of this nature may be allowed where it tends to establish a fact material for the People to prove. People v. Peete, 28 Cal.2d 306, 169 P.2d 924 (1946). In the case at bar, however, there

was no need for the testimony since ownership of the jacket, keys and auto were established by stipulation and were *not* facts to be proven.

In State v. Hunt, 91 Ariz. 145, 148, 370 P.2d 640, 641 (1962), the Arizona Supreme Court stated:

"Admission of evidence concerning acts which constitute other separate offenses is prejudicial to the accused receiving a fair and impartial trial. (citations omitted)."

We think it is clear that the evidence in question gave rise to an inference that defendant had been under suspicion for criminal misconduct related to narcotics.

The appellee also argues that timely objections were not made and that the trial judge's instructions sufficiently cured any defects. We think not and agree with the reasoning in State v. Kellington, 93 Ariz. 396, 398, 381 P.2d 215, 216 (1963), wherein the Court stated:

"Had counsel for defendant made an objection in the presence of the jury, and had the trial judge admonished the jury to strike such testimony from their minds, it would have served no real purpose. The damage had been done, for the effect of such testimony, having no relation to the crime charged, was to create in the minds of the jury an impression that the defendant's character was bad, and no admonition by the court could expunge this prejudicial attribute." See also, State v. Byrd, 62 Ariz. 24, 152 P.2d 669 (1944).

 We will not go into detailed discussion regarding the prosecution's closing argument but merely point out that an attorney should never expound his personal belief as to a defendant's guilt or innocence while making his closing argument. State v. Abney, 103 Ariz. 294, 440 P.2d 914 (1968). The admonition by the trial judge may or may not have been sufficient, but in view of the other errors perpetrated against the defendant, we think it unlikely that the remarks were totally disregarded by the jury.

After carefully reviewing the entire record, we are of the opinion that "it appears reasonably possible that the error might have materially influenced the jury in arriving at its verdict" and later admonitions by the trial court did not correct that error. Chapman, supra.

The proposition has been well stated in State v. Suleski, 67 Wash.2d 45, 406 P.2d 613, 617 (1965), as follows:

"It is presumed that juries follow the instructions of the court. (citation omitted). However, where evidence is admitted which is inherently prejudicial and of such a nature as to be most likely to impress itself upon the minds of the jurors, a subsequent withdrawal of that evidence, even when accompanied by an instruction to disregard, cannot logically be said to remove the prejudicial impression created. (citation omitted)."

The judgment of conviction is hereby reversed and the cause is remanded for proceedings not inconsistent with this opinion.

STEVENS, P. J., and DONOFRIO, J., concur.