667 P.2d 234

**STATE of Arizona, Appellee,**

v.

**Joe Angel MOYA, Appellant.**

**No. 1 CA–CR 5979.**

Court of Appeals of Arizona, Division 1, Department B.

July 7, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Criminal Division, Jack Roberts, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Terry J. Adams, Deputy Public Defender, Phoenix, for appellant.

OPINION

GRANT, Judge.

Appellant brings this appeal from his conviction of five counts of forgery, class 4 felonies,[1] following trial by jury. The state filed an allegation of prior convictions alleging that appellant had been convicted of three previous felonies. After the jury returned its verdicts finding appellant guilty of five counts of forgery as charged, appellant admitted prior convictions for assault with a deadly weapon and armed robbery. The trial court sentenced appellant to serve 12 years on all counts. The sentence imposed in count I was ordered to run concurrently with a sentence imposed in an unrelated manslaughter conviction. The trial court ordered the sentences for counts II through V to run concurrently with one another, but consecutively to the sentence imposed for manslaughter. The trial court stated on the record its reasons for imposing maximum terms and consecutive terms. Appellant timely filed a notice of appeal, and raises five issues for our consideration:

1. Whether the trial court committed reversible error in the manner in which it disqualified itself;

2. Whether the trial court abused its discretion in denying appellant's motion for discovery of the victim's medical records;

3. Whether the trial court erred in allowing a defense witness to invoke the fifth amendment;

4. Whether the trial court erred in instructing the jury;

5. Whether the prosecutor commented on appellant's right to remain silent during closing argument.

The evidence introduced at trial established that during June through July, 1981, appellant cashed five checks made out on the checking account of the victim. The checks were made out to appellant or to

cash, and appellant presented the checks to a teller at the bank. The teller identified appellant at trial. Prior to having cashed the five checks which formed the basis of the charges in this case, the teller had previously cashed a check written to appellant and signed by the victim in mid-June, 1981. Prior to cashing that particular check, the teller had called the victim for authorization to cash the check, and the victim authorized the cashing of the check. That check was in the sum of $1,000.

The victim testified that while she was a patient at Camelback Hospital she met appellant and his girl friend, Susan Schultz. She employed the defendant and his girl friend to live with her and care for her. In June, 1981 the victim wrote a check for $1,000 made out to appellant and asked him to cash it. From the proceeds, she paid appellant $900 for his work. She gave him no other checks or permission to cash checks or sign her name. She testified that she did not sign the five checks which form the basis of these charges. On July 2, 1981, the victim went to the bank to withdraw funds for purposes of travelling. Upon discovering the low balance in her checking account, she determined that funds were missing, and signed an affidavit of forgery at the bank.

A document analyst for the Department of Public Safety compared a handwriting example from appellant to the five checks that form the basis of the forgery counts in this case. He determined that all five of the checks were written by appellant. Following testimony of the teller, the victim and the document analyst, the state rested.

Before appellant presented evidence, the trial court held a hearing in-chambers and determined that Susan Schultz, who was then charged with obstructing justice, could validly invoke the fifth amendment in this case. Defense counsel then called her as a witness in the presence of the jury, and, upon questioning, Schultz did exercise her right to remain silent on the advice of her counsel. Nevertheless, defense counsel did

1. A.R.S. §§ 13–2002, and 2001.

ask her leading questions which she did not answer. Appellant also called Detective Spratley and asked Spratley if he had questioned Schultz regarding her observations of the victim during the time that Schultz and appellant lived with her. The trial court sustained the state's hearsay objection to the questioning. The defense then rested.

## DISQUALIFICATION OF TRIAL COURT

Prior to trial, the Honorable Philip Marquardt was assigned to preside over the instant case. Judge Marquardt considered several pretrial motions filed by both parties. On January 26, 1982, Judge Marquardt disqualified himself. The case was then tried before the Honorable Cecil B. Patterson, Jr.

No record was made of the proceedings on January 26, 1982, when Judge Marquardt disqualified himself. On January 27, 1982, appellant's counsel made a record concerning the matter before Judge Patterson. That record reveals that appellant's counsel and the prosecutor spoke with Judge Marquardt about a possibility of disposing of the case without a trial. Judge Marquardt indicated that if the appellant pled guilty, he would not be inclined to impose upon appellant sentences in this case which would run consecutive to a sentence Marquardt had already imposed on appellant in an unrelated case. Appellant declined to accept the plea, and the state requested that Judge Marquardt recuse himself from proceeding in this case. Judge Marquardt did disqualify himself. At the proceedings on January 27, 1982, appellant objected to the change of judge, and the objection was overruled.

On appeal, appellant contends that the trial court failed to follow the provisions of rule 10, Rules of Criminal Procedure, 17 A.R.S., in granting the state's motion for a new judge. He therefore claims that the state waived its right to a change of judge pursuant to rule 10.4. Appellant also contends that the state engaged in a form of "judge shopping" which is precluded under the rules, and which prejudiced appellant,

because appellant received consecutive sentences in this case.

It is clear that the provisions of rule 10 were not complied with in this case. The question, however, is not whether there was error in noncompliance with the rules, but rather, whether the error is ground for reversal. Several factors must be noted. First, a conviction will not be reversed for technical error in the pleadings or proceedings unless the defendant can show that he was actually prejudiced with respect to a substantial right. Arizona Constitution, Art. 6, § 22; A.R.S. § 13–3987. We know of no authority in Arizona which holds as reversible error a change of judge which did not comply with the Rules of Criminal Procedure where it has not been established that the judge before whom the case was ultimately heard was prejudiced or biased. Prejudice to the substantial rights of the defendant will not be presumed and must appear in the record. *State v. Brewer,* 26 Ariz.App. 408, 549 P.2d 188 (1976). The standard for determining whether error is prejudicial is whether it appears reasonably possible that the error may have materially influenced the jury in arriving at its verdict. *State v. Serrano,* 17 Ariz.App. 473, 498 P.2d 547 (1972).

In this case, appellant does not contend that he did not receive a fair trial from Judge Patterson; moreover, there is no indication in the record that Judge Patterson was biased or prejudiced against the defendant. The purpose of rule 10 is to insure that a trial is presided over by a judge who is completely impartial. *See State v. Neil,* 102 Ariz. 110, 425 P.2d 842 (1967); *State v. Barnes,* 118 Ariz. 200, 575 P.2d 830 (App.1978). It is evident in this case that appellant was tried by a fair and impartial judge, as was his right, and that the spirit of rule 10, therefore, was not violated.

Appellant asserts, nevertheless, that he was prejudiced by the noncompliance with the provisions of rule 10 because Judge Marquardt would have imposed concurrent sentences whereas Judge Patterson imposed

consecutive sentences. The right to an impartial judge does not include the right to a judge of one's own choosing. *State v. Barnes, supra.* Although appellant asserts that Judge Marquardt would have imposed concurrent sentences, the record on appellant's claim is scanty and speculative. Judge Marquardt had not yet heard the evidence in appellant's trial. More importantly, Judge Marquardt was in the best position to determine his own prejudice. The right to a fair and impartial judge belongs equally to the defendant and to the state. See rule 17.4(a), Arizona Rules of Criminal Procedure. In determining to disqualify himself, Judge Marquardt apparently stated that he wanted to avoid the appearance of unfairness to the state. As the appellee points out, this action on the part of Judge Marquardt constituted commendable restraint. Finally, appellant has no right to receive concurrent sentences. He has a right to be sentenced by a judge who will consider the appropriate sentencing factors fairly, which was honored. Therefore, we conclude that because appellant has failed to establish that he was denied a substantial right by virtue of the noncompliance with rule 10, Judge Marquardt did not commit reversible error in the manner in which he disqualified himself.

## DISCLOSURE OF MEDICAL RECORDS OF THE VICTIM

As his second issue appellant contends that the trial court erred in denying him access to the medical records of the victim in this case. He asserts that the victim had been taking Lithium Carbonate after her discharge from Camelback Hospital, and that this medication might have caused her to become disoriented and confused, causing her to believe that she had not given appellant permission to sign the five checks, when in fact, she had. He asserts that he learned three days prior to trial, in an interview with the victim, that she had been taking the medication after her discharge from Camelback Hospital. He filed a motion one day before trial seeking access to the medical records. The trial court denied the motion as untimely, and on the grounds

that Judge Marquardt had previously ruled on the motion and denied it.

The transcript of the oral argument on the motion makes it clear that in October, 1981, the defendant knew that the victim had been hospitalized. There was a hearing on the medical condition of the victim and the fact that she had been suffering from manic depression. The transcript of the argument also reveals that appellant had brought a motion for disclosure of the medical records of the victim in another case to determine whether the victim was competent to testify. Defendant at that time also wanted to use the medical reports of the victim to test the victim's ability to recall and remember. Judge Marquardt denied that motion at that time. In this case the trial court denied appellant's motion finding that the information was available to him in October of 1981, and that the motion was not filed until January 27, 1982. The trial court ruled, therefore, that the motion was not timely in accordance with the provisions of rule 16.1(b), Rules of Criminal Procedure, 17 A.R.S. The trial court also denied appellant's motion on the grounds that it would not review Judge Marquardt's prior order.

■■■ The provisions of rule 16.1 are clear. Rule 16.1(b) provides that all motions must be made no later than 20 days prior to the date set for trial. The date set for trial under this rule means the date of the first trial setting. *State v. Superior Court,* 127 Ariz. 175, 619 P.2d 3 (1980). Any motion which is not timely raised under rule 16.1(b) "*shall* be precluded, unless the basis therefor was not then known, and by the exercise of reasonable diligence could not then have been known, and the party raises it promptly upon learning of it." Rule 16.-1(c). (emphasis added) It is abundantly clear from this record that defense counsel had known in October, 1981, that the victim had been hospitalized with manic depression, and had previously requested the same records involved in the request *sub judice,* and that he sought the records to test the victim's recall and credibility. Therefore the trial court did not err in determining

that appellant's motion was untimely and thus precluded pursuant to rule 16.1(c). *See State ex rel. Baumert v. Municipal Court of City of Phoenix,* 124 Ariz. 543, 606 P.2d 33 (App.1979).

Additionally, we note that rule 16.1(d) provides:

> Except for good cause, or as otherwise provided by these rules, an issue previously determined by the court shall not be reconsidered.

We find that the trial court did not err in denying appellant's motion both on the grounds of untimeliness and on the grounds that Judge Marquardt had already properly denied the motion.

We further note that appellant was able to elicit testimony from the victim to the effect that she was taking two tablets of Lithium per day following her release from the hospital. Her testimony was that Camelback Hospital was a psychiatric hospital. Appellant argued in his closing argument that her testimony was not credible because she had been in a mental hospital, had taken Lithium, and had acted strangely following her discharge from the hospital. Therefore, the appellant was not denied an opportunity to present his theory of the case by virtue of the trial court's ruling denying him access to the victim's medical records. We find no error.

## WITNESS' INVOCATION OF FIFTH AMENDMENT

For his third issue on appeal, appellant argues that the trial court erred in allowing Susan Schultz to invoke the fifth amendment after he called her as a witness to give testimony in his behalf. At a hearing out of the presence of the jury prior to her testimony, Schultz's counsel told the trial court that Schultz had been charged with hindering prosecution in a matter involving appellant, and that counsel had advised Schultz to invoke her right against self-incrimination as to any question concerning her relationship with the defendant. The prosecutor indicated that prior to appellant's arrest in October, 1981, the police had warned Schultz that she was under surveillance and would be charged if they caught her aiding appellant. Following that warning, the police followed the couple, who were in Schultz's car, in a high speed chase through a residential area, reaching speeds in excess of 90 miles per hour, running red lights and stop signs. Schultz wrecked her car after driving through a fence. When police asked her why she ran, she stated, *inter alia,* that she knew that there were warrants out for the defendant, but that she loved him. The prosecutor indicated that if Schultz decided to testify, he would cross-examine her concerning her relationship with the defendant, and her motive to testify. The trial court then determined that Schultz had the right to invoke the privilege against self-incrimination.

Appellant contends that the trial court erred in determining that Schultz had the right to invoke her fifth amendment privilege because Schultz was not under investigation for the forgeries, was not being prosecuted for them, and because the hindering prosecution charge was not related to the forgeries. He contends that one does not have the right to invoke the fifth amendment if the possibility of prosecution is not real. *State v. Verdugo,* 124 Ariz. 91, 602 P.2d 472 (1979). He argues that Schultz should not have been allowed to invoke the privilege where the danger of prosecution was "imaginary and unsubstantial."

It is indeed clear that Schultz had been charged with hindering prosecution arising out of her activities and involvement with appellant. It is also apparent that the state intended to prosecute her on those charges. The state would have been able to cross-examine Schultz about her relationship to appellant, her motive for testifying in this case, and her participation in illegal activities with appellant (the high speed chase), because those matters would bear directly upon her credibility in this case. The evidence elicited as a result of such questioning would have been relevant in a subsequent trial against Schultz for hindering prosecution. Therefore, her testimony in this case could have been used against her in the subsequent prosecution,

and the trial court did not err in determining that she could invoke her fifth amendment privilege.

## INSTRUCTIONS

Appellant argues that the trial court erred in instructing the jury, over his objection, as follows:

> The State must prove that the defendant has done an act which is forbidden by law and that he intended to do it. You may determine that the defendant intended to do the act if he did it voluntarily. The State does not have to prove that the defendant knew the act was forbidden by law.

Relying on *State v. Mincey*, 130 Ariz. 389, 636 P.2d 637 (1981), the defendant contends that the foregoing instruction unconstitutionally shifted the burden of proof to him. We disagree.

We note first that the presumption contained in the instruction in the instant case was distinguishable from the presumption for which the supreme court reversed the conviction in *Mincey, supra.* The instruction in this case said that the jury may presume the defendant intended to do something if the state proved that he did it voluntarily. The presumption in this case was thus a permissive presumption. The presumption in *Mincey* differed substantively from the presumption in the instant case in that the jury in *Mincey* was instructed that a person is presumed to intend to do that which he voluntarily and willfully does in fact do. In this case the jury was also instructed that the presumption could be overcome by contrary evidence. Thus, not only was the instruction substantively distinguishable from the instruction in this case, but also, the instruction was conclusive, rather than permissive, and clearly did shift the burden of proof to the defendant. Division 2 of this court has recently determined that the instruction given in this case, because it is permissive, does not unconstitutionally shift the burden of proof. *State v. Lopez*, 134 Ariz. 469, 657 P.2d 882 (1982). We agree. We find no error in the instructions given to the jury.

## RIGHT TO REMAIN SILENT

As his final issue on appeal, appellant contends that the following statements made by the prosecutor in closing argument constituted a comment on his right to remain silent:

> Now, the case, according to Mr. Babbitt [defense counsel] in his opening statements, was authorization, this case involved, according to Mr. Babbitt, authorization. The State submits to you, ladies and gentlemen, there is virtually zero evidence as to authorization in this case.

> \* \* \* \* \* \*

> Mr. Babbitt comes up here to talk with you about authorization. That's what he told you he was going to tell you. He has to start with finding it and the facts that were admitted in this case, ladies and gentlemen, in this particular case on this particular day, the forgeries are five. The authorization is zero. There is no evidence in this case whatsoever of authorization.

> \* \* \* \* \* \*

> Now, the next assertion Mr. Babbitt made was there might be some evidence Joe Moya told Susan Leedom certain things and in fact it would seem unusual to me if he hadn't told her some things to legitimize taking money from [the victim's] account. You don't have any basis whether or not that was a truthful statement to Susan Leedom.

Appellant, who did not testify, did not object to the argument. He contends, however, that the argument constituted fundamental error, relying on *State v. DeCello*, 113 Ariz. 255, 550 P.2d 633 (1976), where the prosecutor argued:

> No one, no one, no one got up on this stand and testified to you contrary to what was testified to you by the witnesses . . . .

113 Ariz. at 258, 550 P.2d at 636.

Defense counsel, in opening statement, had told the jury he would produce Susan Schultz as a witness in order to es-

tablish that the victim authorized appellant to write checks on her account. Susan Schultz invoked the fifth amendment, and in closing argument, defense counsel stated that he did not produce Schultz's testimony. He then argued that the victim's testimony was not reliable because she had just been released from a mental hospital and was taking drugs, and that she did authorize the signing of the checks. In the context of defense counsel's argument, it is clear that the prosecutor's remarks in closing argument constituted a comment about the lack of contradicting evidence, rather than appellant's failure to testify. Such comments are clearly permissible. *State v. Still*, 119 Ariz. 549, 582 P.2d 639 (1978); *State v. Flynn*, 109 Ariz. 545, 514 P.2d 466 (1973).

For the foregoing reasons, the judgments and sentences are affirmed.

FROEB, P.J., and GREER, J., concur.