904 P.2d 1258

**STATE of Arizona, Appellee,**

v.

**Joel Kenton BARR, Appellant.**

**No. 1 CA–CR 93–0275.**

Court of Appeals of Arizona,
Division 1, Department C.

May 16, 1995.

Review Denied Oct. 24, 1995.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals .Section, and John Pressley Todd, Asst. Atty. Gen., Phoenix, for appellee.

John M. Antieau, Phoenix, for appellant.

## OPINION

VOSS, Judge.

Appellant Joel Kenton Barr was convicted after a jury trial of one count of third-degree criminal trespass, a class 3 misdemeanor, and one count of resisting arrest, a class 6 felony. The trial court sentenced Appellant to time served for the trespassing conviction, and placed Appellant on three years probation for the resisting arrest conviction. Appellant appeals his convictions and sentences to. this court. We affirm.

## FACTS AND PROCEDURAL HISTORY

We view the facts in the light most favorable to sustaining the jury verdict. *State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

Appellant, as president of the Show Low Pines Water Utility Corporation, applied for a Certificate of Convenience and Necessity from the Arizona Corporation Commission. A Commission hearing on this matter was scheduled for 9:30 a.m. on October 22, 1992, before hearing officer Mark Stern. Minutes after 9:30 a.m., Stern had not yet arrived in the designated hearing room, prompting Appellant to go to Stern's office to ask when the hearing would begin. Stern replied, "When I get in the room." Appellant returned to the hearing room and announced to those present that he had a 10:00 a.m. appointment at a cable television company. He then left the building without requesting a continuance. Soon thereafter, the hearing began and Appellant's application was deemed defaulted in his absence.

That same day, Petitioner returned to the Commission hearing room around noon. Beth Ann Burns, the chief hearing officer, entered the room and asked Appellant whether she could be of assistance. In a raised voice, Appellant indicated that he wanted the hearing to be convened. After Burns informed him that the hearing had occurred in his absence, Appellant complained that his rights were violated and then walked into an office shouting, "Where the hell is everybody?" Burns then asked Appellant to leave, but he did not acknowledge this request and continued "hollering." At Burns's request, the Capitol police were called. Burns asked Appellant to leave three more times, after which he left the office and sat on a couch in a hallway.

When the two responding officers arrived, Appellant was advised that he no longer had any business in the building and was asked to leave the premises at least three times. Ultimately, he was told that he would be arrested if he did not leave, to which he responded, "Go ahead and arrest me." When the officers attempted to place Appellant under arrest for trespassing, he resisted by moving his hands and refusing to hold them behind his back. Appellant also was holding a portable telephone at the time, which one of the officers attempted to remove partly because he feared Appellant might use it as a weapon.

A third officer arrived. At this time, Appellant's arms were locked in front of him and he was "jerking back and forth, trying to resist the efforts of the officers." Attempting to assist with this arrest, the third officer grabbed one of Appellant's arms so that it could be handcuffed. The three officers and Appellant then fell to the floor. Appellant looked at the third officer and kicked him in the thigh. Finally, Appellant was subdued and arrested.

Appellant was charged with third-degree criminal trespass, disorderly conduct, and resisting arrest. After a jury trial, he was convicted of trespassing and resisting arrest, but acquitted of disorderly conduct. He was sentenced to time served for the trespassing conviction and placed on three years probation for the resisting arrest conviction. In addition, Appellant was ordered to perform 100 hours of community service.

Appellant timely appealed to this court, and raises the following five arguments: (1) That there was insufficient evidence to support his convictions; (2) that the trial court abused its discretion by admitting evidence of two prior acts; (3) that the trial court erred by excluding evidence offered to show his state of mind; (4) that the trial court erred by denying his motion for a mistrial because of judicial bias and prejudice; and (5) that the trial court erred by refusing to give his proposed jury instruction.

## DISCUSSION

*A. Sufficiency of the Evidence.*

At the close of the State's case, Appellant contended that the State's evidence was insufficient to support a conviction and moved for a judgment of acquittal on all counts pursuant to Rule 20(a), Arizona Rules of Criminal Procedure ("Rule 20(a)"). The trial court denied this motion. On appeal, Appellant contends that the trial court erred by denying this motion because the State did not present substantial evidence to sustain his convictions of third-degree criminal trespass and of resisting arrest. We disagree.

Rule 20(a) requires the trial court to enter a judgment of acquittal "if there is

no substantial evidence to warrant a conviction." *State v. Landrigan,* 176 Ariz 1, 4, 859 P.2d 111, 114 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 334, 126 L.Ed.2d 279 (1993); *State v. Fodor,* 179 Ariz. 442, 451, 880 P.2d 662, 671 (App.1994). If reasonable persons may fairly differ as to whether evidence establishes a fact in issue, such evidence is substantial. *Landrigan,* 176 Ariz. at 4, 859 P.2d at 114; *Fodor,* 179 Ariz. at 451, 880 P.2d at 671.

### 1. Third–Degree Criminal Trespass.

Appellant raises three arguments to challenge the sufficiency of the evidence supporting his conviction of third-degree criminal trespass. He contends: (1) That the trespass statute applies only to private property; (2) that there was no evidence showing that he entered or remained "unlawfully" at the Corporation Commission; and (3) that his trespass conviction is inconsistent with his acquittal on the charge of disorderly conduct. All three arguments are meritless.

■ Appellant's first argument involves statutory construction. Arizona Revised Statutes Annotated ("A.R.S.") section 13–1502(A) (1989) defines third-degree criminal trespass as follows:

A. A person commits criminal trespass in the third degree by:

1. Knowingly entering or remaining unlawfully on any real property after a reasonable request to leave by the owner or any other person having lawful control over such property, or reasonable notice prohibiting entry.

When construing a statute, we look to the statutory language and give effect to the words and phrases in accordance with their commonly accepted meaning unless the legislature has offered its own definitions or a special meaning is apparent from the context. A.R.S. § 1–213 (1994); *State v. Reynolds,* 170 Ariz. 233, 234, 823 P.2d 681, 682 (1992).

■ Based upon our examination of the plain language of A.R.S. section 13–1502(A), we conclude that it applies to both private and public property. There is no indication in the statute or elsewhere that the legislature intended to limit this criminal trespass statute solely to private property. The legislature could have distinguished between private and public property, but did not; rather, it used the phrase "any real property" in the definition of this offense. Generally, "the word 'any' is, in its ordinary sense, broadly inclusive." *City of Phoenix v. Tanner,* 63 Ariz. 278, 280, 161 P.2d 923, 924 (1945). Moreover, the United States Supreme Court has recognized the propriety of applying a trespass statute prohibiting "trespass upon the property of another" to public property, noting that "[t]he State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Adderley v. Florida,* 385 U.S. 39, 47, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966).

Finally, we are not persuaded by the two decisions Appellant has cited to support his argument that A.R.S. section 13–1502(A) does not apply to public property. The first decision, *State v. Blakely,* 181 Mont. 118, 592 P.2d 501 (1979), is readily distinguishable from the present case. There, the property at issue was open to the public, and signs prohibited grazing by livestock, not the presence of persons. *Id.* 592 P.2d at 502. Thus, unlike the present case where Appellant was requested to leave the premises, the defendant in *Blakely* had no such request or notice. *Id.* at 503. Moreover, the court found a "complete failure of proof" that the defendant was on the public property on the date charged. *Id.* In the second decision cited by Appellant, *State v. Cutnose,* 87 N.M. 300, 532 P.2d 889, 891–92 (App.1975), the court concluded that New Mexico's general trespass statute did not apply to public property because another statute specifically was enacted for public property. Not only is *Cutnose* distinguishable insofar as Arizona does not have a specific statute proscribing trespassing on public property, but *Cutnose* also has been overruled by the New Mexico Supreme Court in *State v. McCormack,* 100 N.M. 657, 674 P.2d 1117, 1120–21 (1984).

■ We therefore hold that a person can be convicted of third-degree criminal trespass on public property pursuant to A.R.S. section 13–1502(A). Accordingly, the occurrence of this incident on public property did

not entitle Appellant to a judgment of acquittal.

■ We now address Appellant's second argument—that the State failed to present substantial evidence demonstrating that he entered or remained unlawfully at the Corporation Commission after a reasonable request to leave by a person with lawful control over the property.

■ A.R.S. section 13–1501(1) (1991)[1] defines "enter or remain unlawfully" to mean "an act of a person who enters or remains on premises when such person's intent for so entering or remaining is not licensed, authorized or otherwise privileged." Moreover, we agree with Appellant that every request of any state employee to leave public property is not necessarily reasonable for purposes of A.R.S. section 13–1502(A). Rather, we believe that "lawfulness" of a defendant's presence on public property and the reasonableness of a state employee's request to leave such property are issues for the jury to decide in light of the circumstances of each particular case.

Here, the jury was presented with evidence that Appellant left the Corporation Commission without requesting a continuance of his hearing and then returned several hours after the hearing had concluded. When he was informed by Burns that the hearing was over and that he no longer had any business at the Commission, Appellant began yelling. Burns, who had authority to ask someone to leave the premises, requested that Appellant leave. Instead of leaving, Appellant continued to yell and was disruptive. Thereafter, Appellant refused to comply with the officers' requests to leave the premises. Because the jury reasonably could conclude from this evidence that Appellant remained at the Commission for a purpose other than official business after a reasonable request to leave, the State presented substantial evidence to warrant a conviction for third-degree trespass.

■ Finally, we reject Appellant's third argument because his acquittal on the disorderly conduct charge is immaterial to his trespass conviction. Disorderly conduct is not an element of criminal trespass. Moreover, the jury's acquittal on the disorderly conduct charge did not create inconsistent verdicts and, even had it done so, there is no requirement that a jury's verdicts on different counts be consistent. *State v. Zakhar*, 105 Ariz. 31, 32, 459 P.2d 83, 84 (1969).

Accordingly, we conclude that the court correctly denied Appellant's Rule 20(a) motion for acquittal with respect to the charge of third-degree criminal trespass.

### 2. Resisting Arrest.

■ Appellant also contends that the court erred by denying his Rule 20(a) motion with respect to the resisting arrest charge. Specifically, he argues that there was no evidence proving that he created "a substantial risk of causing physical injury." We disagree.

Defendant was charged pursuant to A.R.S. section 13–2508(A)(2) (1989), which provides:

A. A person commits resisting arrest by intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by:

. . . .

2. Using any other means creating a substantial risk of causing physical injury to the peace officer or another.

Here, Appellant locked his arms in front of him and jerked back and forth when the officers sought to handcuff him. He also held a portable phone which one officer feared could be used as a weapon. Moreover, when Appellant and the officers fell to the floor, he kicked one of them in the thigh. Given these facts, reasonable persons could differ as to whether Appellant created a substantial risk of causing physical injury.

Because there was substantial evidence to support Appellant's conviction for resisting arrest, the trial court did not err by denying Appellant's Rule 20(a) motion for acquittal of this offense.

---

1. The legislature has amended this statute since 1992. *See* A.R.S. § 13–1501(1) (Supp.1994). The amendments, however, affect neither the analysis nor resolution of this case.

*B. Other Acts Evidence.*

■ Appellant contends that the trial court abused its discretion by admitting in evidence testimony that he previously had chained himself to the Corporation Commission flagpole and had spray-painted "Article 6" on the wall of the Commission. He alleges that this violated Rule 404(b), Arizona Rules of Evidence. We disagree.

■ Admission of other crimes, wrongs, or acts is within the trial court's discretion and will not be reversed on appeal absent an abuse of discretion. *State v. Robinson,* 165 Ariz. 51, 56, 796 P.2d 853, 858 (1990). Rule 404(b), Arizona Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the United States Supreme Court interpreted Rule 404(b), Federal Rules of Evidence, and recognized the existence of four provisions that protect defendants from unfair prejudice. First, the evidence must be examined to determine whether it is offered for a proper purpose and not to prove the character of the defendant. *Id.* at 691, 108 S.Ct. at 1502. Second, the trial court must determine whether the evidence is relevant under Rule 402. *Id.* The Court noted that "[i]n the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Id.* at 689, 108 S.Ct. at 1501. Third, it must be determined whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Id.* at 691, 108 S.Ct. at 1502. Finally, the trial court must give a limiting instruction, if requested. *Id.* The Arizona Supreme Court has noted that the same four protections against unfair prejudice are embodied in Rule 404(b), Arizona Rules of Evidence—a provision which, for purposes of this analysis, mirrors the relevant portions of Rule 404(b), Federal Rules of Evidence. *See Atwood,* 171 Ariz. at 638, 832 P.2d at 655.

Applying the *Huddleston* analysis here, we conclude that the trial court did not abuse its discretion by admitting testimony about these acts in evidence. First, they were introduced for proper purposes with respect to the three charged crimes—disorderly conduct,[2] third-degree criminal trespass, and resisting arrest. Prior to trial, Appellant gave notice that he might raise several defenses at trial, and among these were lack of specific intent, no criminal intent, and insufficiency of the State's evidence. The prior acts provided evidence of Appellant's intent—an element of each offense that the State had the burden of proving. Moreover, because Appellant committed both of the prior acts to protest actions of the Corporation Commission, they certainly were evidence that the motive for Appellant's conduct here was to protest the Commission hearing of October 22, 1992. Therefore, the evidence was offered for a proper purpose pursuant to Rule 404(b). Second, the jury reasonably could conclude that the prior acts occurred and that Appellant was the actor. Not only did Burns testify that she personally had observed Appellant chained to the flagpole, but Appellant actually was convicted of criminal damage for painting "Article 6" on a wall of the Corporation Commission. Moreover, Appellant admitted that he committed both prior acts. Thus, the evidence was relevant for purposes of Rule 402. Third, the probative value of Appellant's prior acts was significant as they provided circumstantial evidence bearing on Appellant's intent and motive. By comparison, there was little danger that this evidence would confuse or unduly influence jurors to decide the case on an improper basis such as emotion, sympathy, or horror. *See State v. Schurz,* 176 Ariz. 46, 52, 859 P.2d 156, 162 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 640, 126 L.Ed.2d 598 (1993). Finally, both the state and Appellant

---

2. A.R.S. section 13–2904(A)(2) (1989) defines this offense as follows: "A person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person ... [m]akes unreasonable noise."

requested the trial court to give a standard instruction concerning the prior acts, and the court gave a specific and proper instruction on the limited use of the challenged evidence.

Accordingly, we conclude that the trial court did not abuse its discretion by admitting in evidence testimony concerning Appellant's two prior acts.

### C. *Exclusion of Testimony.*

In the State's case-in-chief, Burns testified about her comments to Appellant when he returned to the Corporation Commission. Appellant attempted to testify about Burns's "exact words," but the trial court sustained the State's hearsay objection and precluded this testimony. Appellant contends this amounted to reversible error. We disagree.

Rule 801(c), Arizona Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The Arizona Supreme Court has recognized that, if relevant, extrajudicial "words or writings offered to prove the effect on the hearer or reader are admissible where offered to show their effect on one whose conduct is in issue." *State v. Rivera*, 139 Ariz. 409, 414, 678 P.2d 1373, 1378 (1984). Rule 103(a)(2), Arizona Rules of Evidence ("Rule 103(a)(2)") addresses situations when the trial court erroneously excludes evidence, and provides:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer [of proof] or was apparent from the context within which questions were asked.

Prejudice to the substantial rights of a defendant will not be presumed and must appear in the record. *State v. Moya*, 136 Ariz. 534, 537, 667 P.2d 234, 237 (App.1983) (citing *State v. Brewer*, 26 Ariz.App. 408, 549 P.2d 188 (1976)). "The standard for determining whether error is prejudicial is whether it appears reasonably possible that the error may have materially influenced the jury in arriving at its verdict." *Moya*, 136 Ariz. at 537, 667 P.2d at 237 (citing *State v. Serrano*, 17 Ariz.App. 473, 498 P.2d 547 (1972)).

Here, we agree with Appellant that his proposed testimony was an admissible extrajudicial statement because it was offered to show the effect on him and not to prove the truth of the matter asserted. Nonetheless, the trial court's preclusion of this testimony is not reversible error. The effect of Burns's "exact words" on Appellant was relevant only for the disorderly conduct charge—the offense of which Appellant was acquitted. As for the other two offenses, third-degree criminal trespass and resisting arrest, it is difficult to envision how Appellant's testimony might have been relevant. Moreover, we are left to speculate about the relevancy of Appellant's precluded testimony because he failed to make an offer of proof pursuant to Rule 103(a)(2). Although Burns testified that she asked Appellant if she could be of assistance and that she informed Appellant that the hearing had proceeded in his absence, the testimony at trial offers no evidence about her "exact words." Thus, on the record before us, it does not appear reasonably possible that the court's preclusion of Appellant's testimony materially influenced the jury's verdicts on the third-degree criminal trespass and resisting arrest offenses.

In sum, because we are left to speculate about both the substance of Appellant's precluded testimony as well as any resulting prejudice to Appellant, reversal is not warranted.

### D. *Denial of Appellant's Motion for a Mistrial.*

When Appellant testified at trial, the court interrupted and directed him to answer the question asked on a number of occasions. At the close of evidence, Appellant moved for a mistrial, arguing that the court's interruptions prejudiced him in the eyes of the jury. The motion was denied. Appellant now contends that the trial court committed reversible error by denying the motion. We disagree.

**442**

 The trial court has a duty to see that the trial is conducted in an orderly manner, and this may require an occasional admonishment to a witness. *See State v. Hill,* 174 Ariz. 313, 323, 848 P.2d 1375, 1385 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 268, 126 L.Ed.2d 219 (1993). A claim of improper judicial remarks must be evaluated according to the circumstances of each case. *Gaston v. Hunter,* 121 Ariz. 33, 59, 588 P.2d 326, 352 (App.1978). "Within reason, a [court] does not display bias or cause prejudice when acting *sua sponte* to control the courtroom and the trial." *State v. Bible,* 175 Ariz. 549, 595, 858 P.2d 1152, 1198 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994).

Here, when Appellant began giving long narrative answers, the trial court explained to both Appellant and his counsel that he wished to have testimony proceed "in a question and answer mode." Thereafter, when Appellant continued to ramble when testifying, the trial court repeatedly directed him to answer only the question asked. After reviewing the record, we conclude that the court's comments to Appellant were entirely appropriate under the circumstances.

*E. Refusal to Give Appellant's "Mere Non-Submission" Instruction.*

 Appellant's final argument is that the trial court committed reversible error by refusing to give his proposed instruction concerning "mere non-submission" for the offense of resisting arrest. We disagree.

 The lack of a particular instruction is not fatal where the instructions, read as a whole, sufficiently set forth the law. *State v. Villafuerte,* 142 Ariz. 323, 329, 690 P.2d 42, 48 (1984), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1234, 84 L.Ed.2d 371 (1985). When the jury is properly instructed on the applicable law, the trial court is not required to provide additional instructions that merely reiterate or enlarge the instructions in a defendant's language. *State v. Salazar,* 173 Ariz. 399, 409, 844 P.2d 566, 576 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3017, 125 L.Ed.2d 707 (1993). Finally, the failure by the trial court to give an instruction is not reversible error unless it is prejudicial to the rights of a defendant and such prejudice appears on the record. *State v. Islas,* 132 Ariz. 590, 591, 647 P.2d 1188, 1189 (App. 1982).

Here, Appellant proposed the following additional instruction:

Mere non[-]submission is not covered under this offense. The offense is limited to forcible resistance involving some substantial danger.

The trial court rejected this instruction because it was covered by the given instructions, which provided:

The crime of resisting arrest requires proof of the following four things:

1. A peace officer, acting in his or her official capacity, sought to arrest the defendant; and

2. The defendant knew, or had reason to know, that the person seeking to make the arrest was a peace officer; and

3. The defendant intentionally prevented or attempted to prevent the peace officer from making the arrest; and

4. The means used by the defendant to prevent the arrest created a substantial risk of physical injury to either the peace officer or another.

Whether the arrest was legally justified is irrelevant.

Mere argument with or criticism of a peace officer is not sufficient grounds, without more, to find a person guilty of "resisting arrest."

Although Appellant's proposed instruction correctly notes that "mere non-submission" is insufficient to support a conviction for resisting arrest, we agree with the trial court that the instructions given adequately informed the jury of the elements of the offense of resisting arrest. To convict Appellant of resisting arrest, the jury was required to find more than "mere non-submission." Indeed, the instructions required a finding that Appellant intentionally used some means to prevent, or to attempt to prevent, his arrest. Therefore, because the instructions implicitly required the jury to find more than "mere non-submission" to convict Appellant

of resisting arrest, the instructions given were sufficient.[3]

Accordingly, the trial court did not err by refusing Appellant's proposed "mere non-submission" instruction.

## CONCLUSION

We have examined the record for fundamental error pursuant to A.R.S. section 13–4035 (1989) and have found none. For the foregoing reasons, Appellant's convictions and sentences are affirmed.

WEISBERG, J., concurs.

EHRLICH, Judge, dissenting.

I respectfully dissent from the majority opinion because I conclude that the trial court clearly erred by admitting evidence that the defendant previously had chained himself to a pole and spray-painted "Article 6" on the Commission's wall. Accordingly, I would reverse the defendant's convictions for criminal trespass and resisting arrest and remand the matter for a new trial.[4]

I take issue with the majority's determination that the defendant's prior acts properly were admitted to establish the intent required for criminal trespass, resisting arrest and disorderly conduct, or to prove the defendant's motive. To the contrary, considering the facts presented when it ruled on the defendant's motion in limine, the trial court had insufficient evidence from which to make admissibility determinations regarding the prior-act evidence. For instance, the state had provided the court with, at most, only skeletal facts describing the defendant's earlier incidents. The prosecution did not submit the dates on which those acts occurred and failed to develop the manner in which they allegedly corresponded to the charged offenses.

Moreover, I am unable to discern the relevance of the prior-act evidence to the criminal charges. The evidence describing the defendant's earlier behavior did not indicate whether he had been asked to leave the premises and refused. *Cf.* A.R.S. § 13–1502. Similarly, the state did not suggest that the prior incidents had resulted in an arrest which the defendant resisted. *Cf.* A.R.S. § 13–2508. Finally, while the defendant was accused in the present case of intentionally disturbing the peace and quiet of a Commission employee by making unreasonable noise, at no time did the state explain that his prior acts concerned the same conduct. *Cf.* A.R.S. § 13–2904. What the acts demonstrated was not the defendant's intent on this occasion, but that, in the past, he had shown himself to be a difficult person in his dealings with the Commission. This is precisely what Rule .404(b) was intended to prevent.

To further compound the error, the trial court denied the defendant's motion in limine without any weighing of the relevance of the prior-act evidence against its prejudicial effect as Rule 403 demands. *See State v. Taylor,* 169 Ariz. 121, 125, 817 P.2d 488, 492 (1991) (Rule 403 balancing test important in any Rule 404(b) inquiry). *Cf. State v. Gonzales,* 140 Ariz. 349, 351, 681 P.2d 1368, 1370 (1984) ("In determining whether the probative value of evidence outweighs the danger of prejudice and confusion, the trial court must examine the purpose of the offer. [Citation omitted.]"); *State v. Salazar,* 181 Ariz. 87, 91, 887 P.2d 617, 621 (App.1994) ("[T]he onus of showing that prejudice is over-balanced by need and good faith should rest on the Government." [Citations omitted.] ). Although I maintain that the prior-act evidence was irrelevant and thus inadmissible, the risk also was too great that the jury would use such evidence for an improper purpose, i.e., "if he did it before he probably did so this time." Morris K. Udall *et al.,* Arizona Prac-

---

3. We also note that the second sentence of Appellant's proposed instruction limited the offense to "forcible resistance." That statement of the law is incorrect. *See* A.R.S. § 13–2508(A)(2); *see also State v. Womack,* 174 Ariz. 108, 111, 847 P.2d 609, 612 (App.1992) (statutory intent is "to prohibit threats or any conduct that creates a substantial risk of injury to another"). A trial court does not err by refusing an instruction that

is an incorrect statement of law. *State v. Leslie,* 147 Ariz. 38, 48–49, 708 P.2d 719, 729–30 (1985); *see also State v. Rodriquez,* 145 Ariz. 157, 175, 700 P.2d 855, 873 (App.1984).

4. Consequently, I would not have decided, as the majority does, the defendant's remaining three issues on appeal.

tice—Law of Evidence § 47, at 90 (3d ed. 1991) (quoting *Gordon v. United States,* 383 F.2d 936, 940 (D.C.Cir.1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968)). I would reverse.