848 P.2d 1375

**STATE of Arizona, Appellee,**

v.

**Clarence David HILL, Appellant.**

**No. CR–90–0164–AP.**

Supreme Court of Arizona,
En Banc.

Jan. 14, 1993.

Reconsideration Denied April 13, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Crane McClennen, Galen H. Wilkes, Phoenix, for appellee.

Glenn A. Franklin, Prescott, for appellant.

## OPINION

FELDMAN, Chief Justice.

Clarence David Hill (hereinafter "Defendant") was convicted of one count of first degree murder under A.R.S. § 13–1105(A)(1) and was sentenced to death. Defendant appeals from his conviction and death sentence. *See* Rule 31.2(b), Ariz. R.Crim.P., 17 A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 13–4031.

## FACTS AND PROCEDURAL HISTORY

Shortly after 5:30 a.m. on June 18, 1989, a local resident discovered a burning body in a Mohave County dump and called the sheriff. When the deputies responded, they found the body still burning and lying on its left side. The deputies noted the presence of vehicle tracks and shoeprints. A comparison of these markings with the tires of the resident's vehicle and his shoes indicated that another vehicle had been in the area and that other shoes had made the prints.

Deputies found a wallet that contained the victim's driver's license but no money. Based on the address on the driver's license, deputies went to the victim's home, where they observed tire tracks and shoeprints similar to those found near the body. Defendant answered the door at the victim's home, wearing only a blanket. He explained that he lived in his motor home on the victim's property. He informed the deputies that the victim drove a small blue pickup truck and described the vehicle. He then asked permission to get dressed, and the deputies followed Defendant to his motor home. The deputies examined Defendant's tennis shoes and noted that the sole design was similar to the shoeprints found near the victim's body.

According to Defendant, he and the victim had been drinking at nearby bars on the previous day. He said that the victim left briefly to go grocery shopping at Best Buy Market, after which they returned to the victim's home. The victim then left again in his pickup truck to "make the rounds." Defendant claimed that he stayed at the victim's home watching television and fell asleep. Defendant said that when he woke up, he went back to his motor home, undressed, and went to bed. He awoke again at approximately 11:00 p.m. and could hear the victim's air conditioner running. Knowing that the victim regularly turned off his air conditioner in the evening, Defendant went to the victim's home to see if he had returned. Finding that he had not, Defendant turned off the air conditioner and fell asleep on the couch, awakening when the deputies knocked on the door. Deputies noted, however, that the air conditioner was running when they arrived.

Detective Sergeant Lent, a tracking specialist, met the deputies at the victim's home, examined the tire tracks and shoeprints, and took measurements. He also examined one of Defendant's tennis shoes. He then proceeded to a nearby bar, where a deputy had located the victim's truck. A gallon container half full of paint thinner and a pair of gloves were found in the back of the truck.

Detective Lent observed and followed shoeprints with distinctive markings, including the logo of "Athletix" and a distortion on the ball of the right shoe, from the bar to the back yard of the victim's home. Defendant's shoes had similar markings, including the "Athletix" logo, and there was a "glob" on the right shoe. Detective Lent then went to the scene and identified the shoeprints there as having been made by the same shoes that made the prints leading from the bar to the victim's home. Based on his examination of Defendant's shoes and the prints both at the scene and from the bar to the victim's home, Detective Lent concluded that Defendant's shoes made the prints. Detective Lent also identified the tire tracks at the scene as having been made by the victim's truck.

A Mohave County fire investigator, George Koskela, examined the position and condition of the body and concluded that a flammable substance had been poured on the front lower portion of the victim as he was lying on his back and that the fire was started while he was in that position. Because the body had fresh blisters, Koskela deduced that the victim had been alive when the fire was started. He further believed that the victim ended up on his side while trying to get up to escape the fire. The state's coroner, as well as Defendant's pathologist, also concluded that the victim was alive when set on fire and that he died from smoke and gas inhalation.

The victim's roommate testified that the victim and Defendant had a heated argument approximately two weeks before the murder over the victim's failure to pay Defendant for work done around the victim's house. When Defendant was arrested on the afternoon of June 18, deputies found over $200 in his wallet, including four $1 dollar bills folded over a receipt from Best Buy Market, dated June 17, showing purchases for $17.75 and change of $2.25. At trial, Defendant testified that he gave the victim $20 to make the purchases and that the victim returned the folded bills as change from the store along with the sales receipt.

A jury found Defendant guilty of first degree murder. Following an aggravation-mitigation hearing, the trial judge found three aggravating factors and one statutory mitigating factor. After considering Defendant's proffered mitigating factors and finding them not substantial enough to call for leniency, the trial judge sentenced Defendant to death.

## DISCUSSION

### I. Trial Issues

#### A. Sufficiency of the Evidence

■ Defendant first asserts that the evidence introduced at trial was insufficient to convict him of first degree murder. A judgment of acquittal is appropriate when there is "no substantial evidence to warrant a conviction." Rule 20(a), Ariz. R.Crim.P., 17 A.R.S. (hereinafter "Rule ____"); see State v. Mathers, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990). "Substantial evidence is more than a mere scintilla and is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" Mathers, 165 Ariz. at 67, 796 P.2d at 869 (quoting State v. Jones, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980)).

Without recounting every incriminating fact, we note that:

1. Approximately two weeks before the victim's death, the victim and Defendant had a heated argument.

2. The victim had no money in his wallet.

3. Defendant had over $200 in his wallet, including four $1 dollar bills folded over a receipt, dated June 17, from Best Buy Market.

4. On June 17, Defendant did not go shopping at Best Buy Market, but the victim did.

5. Defendant's last significant source of income was $500 from his father in March 1989 and a $232 tax refund in late May or June 1989.

6. Tire tracks at the scene corresponded to the tire tracks of the victim's truck, which was found behind a nearby bar.

7. Shoeprints matching Defendant's tennis shoes were found both at the scene and leading from where the victim's truck was found to the victim's home, where Defendant was found.

8. The victim was alive when set on fire and died from smoke and gas inhalation.

From these facts, we believe a reasonable jury could have found that Defendant drove the victim's truck to near where the body was found, dragged the victim from the truck, took the money that he believed the victim owed him, and then set the victim on fire, drove the truck to a nearby bar that the victim frequented, and walked home. Thus, giving the benefit of all reasonable inferences to support the verdict, we believe there was sufficient evidence

from which a rational trier of fact could have found Defendant guilty beyond a reasonable doubt.

## B. Refusal to Strike a Juror for Cause

■ Defendant next contends that the trial court erred by refusing to strike juror Brown, a police officer, for cause. The challenge was made because Brown stated that he would presume police investigations to be complete and thorough. Additionally, Defendant suggests that Brown was biased in favor of the state because he was acquainted with the prosecutor's investigator, the prosecutor, and the coroner associated with this case. Defendant argues that the court's denial of the challenge forced him to use a peremptory challenge to remove Brown from the jury panel.

■ Although a juror may possess certain opinions or preconceived ideas, he or she is not necessarily rendered incompetent to make a fair and impartial decision. *State v. (Ricky) Tison,* 129 Ariz. 526, 533, 633 P.2d 335, 342 (1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). The juror may serve if willing and able to put personal opinions aside and weigh the evidence as the law requires. *See State v. Greenawalt,* 128 Ariz. 388, 393–94, 626 P.2d 118, 123–24, *cert. denied,* 454 U.S. 848, 102 S.Ct. 167, 70 L.Ed.2d 136 (1981). To prevail on the issue of failure to strike for cause, a defendant must show that the potential juror was unable to do this. *See State v. Clabourne,* 142 Ariz. 335, 344, 690 P.2d 54, 63 (1984). We will not disturb the trial judge's decision on such challenges absent a clear showing of an abuse of discretion. *See State v. Rose,* 121 Ariz. 131, 139, 589 P.2d 5, 13 (1978).

In the instant case, Defendant failed to meet this burden. Although Brown stated in his juror questionnaire that he presumed police investigations to be thorough and complete, he stated in subsequent voir dire that "I took [that] question to mean any investigations that is [sic] conducted. I had no knowledge whatsoever of this investigation or what the Defendant is accused of until the judge explained it this morn-

ing.... I was talking about overall in general investigations conducted by a police department." Reporter's Transcript (hereinafter "R.T.") Dec. 5, 1989, at 114. Additionally, Brown assured the judge he could decide the case based on the evidence presented at trial:

> THE PROSECUTOR: Could you still find a defendant not guilty looking at the investigation and you see flaws in that investigation depending on the evidence?
>
> BROWN: If I had a reasonable doubt in my mind that the defendant did not commit the crime, I would find him not guilty.... If [the investigation] came up with the proper evidence or the evidence indicated and I believed that the evidence indicated that the defendant was guilty, then I would find him guilty. If [the investigation] didn't [come up with the proper evidence], regardless of how the investigation was conducted, then I would find the defendant not guilty.

*Id.* at 115.

■ Defendant's suggestion that Brown was biased in favor of the state simply because he knew the coroner, the prosecutor, and the prosecutor's investigator is equally unpersuasive. A juror who knows some of the people involved in a particular case because of his background is not automatically barred from serving on a jury. *See State v. Pawley,* 123 Ariz. 387, 389, 599 P.2d 840, 842 (Ct.App.1979); *see also State v. Brosie,* 24 Ariz.App. 517, 520–21, 540 P.2d 136, 139–40 (1975) (trial judge did not abuse his discretion by refusing to strike for cause a highway patrolman who knew the prosecutor by sight), *aff'd on other grounds,* 113 Ariz. 329, 553 P.2d 1203 (1976). Nonetheless, the impartiality of a potential juror who is personally acquainted with individuals involved in the prosecution is necessarily suspect, and the trial judge must take care to be certain that the juror can and will be fair and impartial.

In this case, the record supports the trial judge's conclusion that Brown was capable of performing his duty fairly and impartially. Although Brown previously had ob-

served an autopsy performed by the coroner, he had no opinion about the coroner's competence:

> THE COURT: Do you have any opinion as to whether Dr. Snell is an average pathologist or as—just as it pertains to autopsies and determining cause of death, above average, much above average, below average, much below average, [or] don't know enough about him to make a determination?
>
> BROWN: I don't know enough about him to make any type of determination of his professional ability.
>
> THE COURT: If one pathologist said the cause of death was fire and another pathologist said it was a fall or gunshot or stabbing, would you be leaning toward Dr. Snell or want to hear more about it or what?
>
> BROWN: I'd want to hear more about it.

R.T., Dec. 5, 1989, at 112. Through his job as a police officer, Brown also was acquainted with the prosecutor. Nevertheless, Brown stated that his acquaintance with the prosecutor would not affect his ability to serve as a fair and impartial juror:

> THE COURT: How do you know Mr. Taylor, professionally or socially?
>
> BROWN: Professionally.
>
> THE COURT: And is that through your business and his business, both in—being in law enforcement?
>
> BROWN: Yes, sir.
>
> THE COURT: Would the fact that you know Mr. Taylor cause you any difficulty serving as a fair and impartial juror in this case? [b]
>
> BROWN: No, sir, it wouldn't.

R.T., Dec. 5, 1989, at 66–67.[1] With regard to his acquaintance with the prosecutor's investigator, Brown again stated that he could be a fair and impartial juror:

> THE COURT: ... Mr. Brown, do you know Mr. Lent through law enforcement?

> BROWN: Yes, sir.
>
> THE COURT: If he's a witness, would that cause you difficulty serving as a fair and impartial juror?
>
> BROWN: No, sir, it would not.
>
> THE COURT: Have you ever worked on an investigation or case together with Mr. Lent?
>
> BROWN: Not that I recall, no, sir.

R.T., Dec. 5, 1989, at 71–72. In an effort to further assure himself of Brown's ability to serve, the trial judge asked Brown if he would convict Defendant if he was not convinced of Defendant's guilt beyond a reasonable doubt. Brown assured the judge that he would not:

> THE COURT: Sometimes the State puts on enough evidence to convince you ... that you are pretty sure the Defendant did it but you're not convinced beyond a reasonable doubt that he did it; could you find the Defendant not guilty even though you thought he more than likely did it or the odds are really good he did it but you have a reasonable doubt in your mind?
>
> BROWN: If I had a reasonable doubt in my mind, I would not convict the Defendant.

R.T., Dec. 5, 1989, at 113. Thus, Brown repeatedly assured the trial judge that he could be fair and impartial despite his acquaintance with persons associated with the prosecution. *See Brosie*, 24 Ariz.App. at 521, 540 P.2d at 140 (mere familiarity with the persons involved does not indicate prejudice).

Defendant relies on *Wasko v. Frankel*, 116 Ariz. 288, 569 P.2d 230 (1977), for his claim that the trial judge erred in failing to strike Brown. We find *Wasko* to be distinguishable from the facts of this case. In *Wasko*, the defendant was sued for medical malpractice, and a potential juror stated that anyone who underwent a disc operation and could be "up and about" should be thankful for the help received from his

---

1. We urge trial judges to be more precise in their voir dire questions. The often used language—would it "cause you any difficulty"—is abstract and susceptible to many interpretations. For example, one reason the juror might have little difficulty is simply that he or she has great faith in the witness' credibility. Trial judges or counsel might better inquire into the prospective juror's relationship with the witness and ask how that relationship would affect that potential juror's treatment of the witness' testimony.

doctor. *Id.* at 290, 569 P.2d at 232. Counsel repeatedly asked the juror whether he could disregard his opinions and fairly consider the evidence, but the juror refused to answer affirmatively and indicated that such an endeavor would be difficult. *Id.* The trial judge refused to strike the juror for cause, and this court reversed because the juror admitted he could not be fair and impartial. *Id.* at 289–90, 569 P.2d at 231–32. In the present case, although Brown had a preconceived opinion regarding the thoroughness of police investigations and was acquainted with people involved in the case, he assured the judge several times in a credible manner that he could serve fairly and impartially, that he could decide the case based on the evidence produced in court, and that he would not convict Defendant if he had a reasonable doubt, regardless of how the investigation was conducted. In light of these assertions, we do not believe the trial judge abused his discretion when he refused to strike Brown for cause.[2]

## C. Presence of the State's Investigator

■ Defendant claims his right to a fair trial was violated because, after invoking the witness exclusion rule, Rule 9.3, the state's designated investigator,[3] who testified last in the state's case-in-chief, remained in the courtroom throughout the trial. Defendant contends that if the witness exclusion rule is to have validity, the state's designated investigator either should remain out of the courtroom until he or she testifies or should be the state's first witness in its case-in-chief.

■ Defendant, however, failed to object to the presence of the state's designated investigator throughout the trial and failed to object when the state called him as the last witness. Consequently, Defendant waived his right to raise this issue on appeal, absent fundamental error. *State v. Gendron*, 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991). Error is fundamental only when it is " 'of such dimensions that it cannot be said that it is possible for a defendant to have had a fair trial.' " *Id.* at 155, 812 P.2d at 628 (quoting *State v. Smith*, 114 Ariz. 415, 420, 561 P.2d 739, 744 (1977)). Under these facts, the error alleged hardly rises to that magnitude. Thus, even if there were error here, *but see* Rule 9.3(d), the error was waived.

## D. Failure to Preserve Evidence

■ Defendant argues that he was deprived of a fair trial because the state failed to preserve the victim's body, the shoeprints, the glob on Defendant's right shoe, and the sales receipt from Best Buy Market. Defendant claims that the *Willits* instruction[4] to the jury was inadequate to cure the state's failure to preserve evidence.

In *State v. Tucker*, we held that a *Willits* instruction adequately protects the defendant's right to a fair trial when the state has failed to preserve evidence unless the state acted in bad faith or the defen-

---

**2.** *Cf. State v. Sexton*, 163 Ariz. 301, 302–03, 787 P.2d 1097, 1098–99 (Ct.App.1989) (trial judge erred in not discharging potential juror for cause when juror expressed misgivings regarding her bias against drunk drivers and she failed to assure the court that she would be fair); *State v. Rodriguez*, 131 Ariz. 400, 401–02, 641 P.2d 888, 889–90 (Ct.App.1982) (trial judge abused discretion by failing to strike potential juror for cause when juror's answers demonstrated she had serious misgivings about her ability to be impartial in light of her recent experience as a victim of crime, which was similar to the offenses for which the defendant was being tried).

**3.** A designated investigator's job is to call attention to factual matters of which counsel may not be aware. Rule 9.3(d), comment.

**4.** A *Willits* instruction is designed to permit an inference in favor of the defendant when the state fails to preserve evidence important to the case. *See State v. Willits*, 96 Ariz. 184, 191, 393 P.2d 274, 279 (1964). The court in the present case instructed:

> If you find that the State has lost, destroyed, or failed to preserve evidence whose contents or quality are important to the issues of this case, then you should weigh the explanation if any given for the loss or unavailability of the evidence. If you find that such explanation is inadequate, then you may draw an inference unfavorable to the State, which in itself may create a reasonable doubt as to the Defendant's guilt.

R.T., Dec. 28, 1989, at 57.

dant is prejudiced by the loss. 157 Ariz. 433, 441–44, 759 P.2d 579, 587–90 (1988); *see State v. Serna,* 163 Ariz. 260, 263–65, 787 P.2d 1056, 1059–61 (1990); *State v. Schad,* 163 Ariz. 411, 415–16, 788 P.2d 1162, 1166–67 (1989), *aff'd,* —— U.S. ——, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991); *cf. State v. Hannah,* 120 Ariz. 1, 1–2, 583 P.2d 888, 888–89 (1978). In *State v. Youngblood,* 173 Ariz. 502, 844 P.2d 1152 (1993), a majority of this court held that in cases where the state failed to preserve evidence, the exculpatory nature of which is unknown, the defendant must show that the state acted in bad faith to implicate due process. In this case, Defendant cites no evidence of bad faith, nor do we find any in the record. Because the exculpatory nature of the evidence is unknown, Defendant's argument must fail.

### E. Prosecutor's Closing Argument

■■■ Defendant alleges that the prosecutor engaged in several instances of misconduct during closing argument, thus denying Defendant a fair trial. Defendant claims the prosecutor misstated the evidence, referred to evidence not in the record, told the jury to ignore the *Willits* instruction, and attacked the defense attorney. Defendant, however, did not object to any of the statements made. His failure to object constitutes a waiver of review on appeal unless the prosecutor's statements amount to fundamental error. *State v. Zaragoza,* 135 Ariz. 63, 67, 659 P.2d 22, 26, *cert. denied,* 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983). We therefore examine the arguments for fundamental error.

We have consistently held that wide latitude is to be given in closing arguments and that counsel may comment on the evidence and argue all reasonable inferences therefrom. *State v. Dumaine,* 162 Ariz. 392, 401, 783 P.2d 1184, 1193 (1989); *Zaragoza,* 135 Ariz. at 68, 659 P.2d at 27. We have thoroughly reviewed the prosecutor's closing argument and find that Defendant's allegations are without merit. All evidence argued by the prosecutor was either directly supported by the record or could be reasonably inferred therefrom.

Nor did the prosecutor tell the jury to ignore the *Willits* instruction. He merely argued that the inference permissible from the instruction was inapplicable given the facts. Finally, the prosecutor's statement about the defense attorney could hardly be characterized as a prejudicial attack. The prosecutor stated, "I think [the defense attorney] tried to trick [Detective Lent]." R.T., Dec. 28, 1989, at 53. We conclude that even if the statements made were improper they do not constitute fundamental error.

### F. Trial Judge's Conduct

■■■ Defendant alleges that he was deprived of a fair trial by a cumulation of incidents, no one of which constitutes reversible error but which, in the aggregate, establish that the trial judge did not preside in an impartial manner. Defendant claims that he was thereby denied his due process right to a fair trial. He bases his argument on ten specific instances of alleged misconduct. We first consider each incident separately but note preliminarily that "[n]ecessarily included in [the right to a fair trial] is the right to have the trial presided over by a judge who is completely impartial and free of bias or prejudice." *State v. Neil,* 102 Ariz. 110, 112, 425 P.2d 842, 844 (1967). Bias and prejudice mean a hostile feeling or spirit of ill will, or undue friendship or favoritism, toward one of the litigants. *In re Guardianship of Styer,* 24 Ariz.App. 148, 151, 536 P.2d 717, 720 (1975).

■■■ Defendant first complains that the judge coached the prosecutor, telling him who would be a good witness for the state when the prosecution and the defense argued over whether Officer Bernie Lawrence could testify. Officer Lawrence had worked with Detective Lent in the past and was offered as an expert in tracking. Officer Lawrence had not been named as a witness, but the state wanted to call him to rebut Defendant's charges that Detective Lent had a reputation for untruthfulness and that plaster casts of the shoeprints should have been made. When the defense

argued that the state had many disclosed witnesses that could be called back for those purposes, the judge said, "Well, I think Bernie Lawrence is the one that would be knowing more about the tracking and the casting...." R.T., Dec. 21, 1989, at 83. The statement was made to explain why the judge was allowing the prosecution to call Officer Lawrence as a witness on the plaster cast issue. The judge then gave the defense time to interview Officer Lawrence before he took the stand. Given these facts, we do not believe the statement showed the judge was biased or was trying to coach or improperly assist the prosecutor.

The next incident occurred when the prosecution and the defense were arguing over whether the *Willits* instruction should be given in light of the defense's claim that the prosecution failed to preserve evidence. The judge decided to give the *Willits* instruction over the prosecution's objection but went on to say that "I don't think this is going to make one bit of difference to the jury." *Id.* at 128. While this last comment may have been unnecessary, we do not believe it demonstrates that the judge was hostile toward the defense or favored the prosecution. Having overruled the objection to the instruction, the judge merely sought to lower the "temperature" by soothing an agitated prosecutor. Diplomacy is a weapon well within a trial judge's arsenal.

The next incident occurred when the judge admonished the defense expert, Dr. Sperry, for failing to answer the prosecutor's question. The trial judge has a duty to see that the trial is conducted in an orderly manner, and this may require an occasional admonishment to a reluctant witness. *Gaston v. Hunter*, 121 Ariz. 33, 59, 588 P.2d 326, 352 (Ct.App.1978). On direct examination, Dr. Sperry testified that he was a scientist, not an advocate, and that the victim was most probably incapacitated by a gunshot prior to being burned. On cross-examination, the prosecution asked whether Dr. Sperry found any evidence of gunshot residue in the victim's tissues. Dr. Sperry's answer was not responsive, even after the judge requested a direct answer. At that point, the judge said, "The answer is stricken; the jury is instructed to disregard it. I believe you can answer the question yes or no, Doctor. I think you're supposed to be a witness, not an advocate." R.T., Dec. 20, 1989, at 140. Again, while the last comment may have shown the judge's irritation, put in context it does not rise to the level of bias or prejudice. Even the best trial judge can run short on patience and turn from diplomacy to exasperation. While patience is a virtue, trial judges are human, and we recognize the difference between irritation and favoritism.

Defendant next complains about the judge's statement that he believed the prosecutor was making an objection on the relevancy of the defense video, which showed a plaster cast of a shoeprint being made at the scene, because of the differences in conditions between summer, when the murder occurred, and winter, when the video was taken. Defendant claims the judge was coaching the prosecutor by giving him the proper grounds for objection. However, prior to the judge's comment, the prosecutor objected to the "relevancy as to the time and place [of the defense video] and the time and place that [the victim's death] took place." R.T., Dec. 21, 1989, at 7. Thus, the prosecutor already had the correct objection. Our reading of the record indicates that the judge's comment was merely a restatement of the prosecutor's objection. Once the judge was sure he understood the prosecutor's objection, he promptly overruled it. We see no bias against Defendant in this.

Defendant also complains that the judge failed to make a ruling on his motion to strike the presentence report. A motion that is not ruled on is deemed denied by operation of law. *KcElwain v. Schuckert*, 13 Ariz.App. 468, 470, 477 P.2d 754, 756 (1970) (citing *Atchison, T. & S.F. Ry. v. Parr*, 96 Ariz. 13, 391 P.2d 575 (1964)). Although the judge neglected to rule on the presentence report, Defendant does not explain, and we fail to see, how such failure demonstrates bias or prejudice.

### G. Evidentiary Rulings that Allegedly Show Prejudice

██ The remainder of the allegations are merely claims that the judge ruled against Defendant, thereby demonstrating bias. In our view, there is a great deal of difference between ruling on questions of law and demonstrating bias and prejudice. We do not believe that even an erroneous ruling necessarily demonstrates a judge's bias toward a litigant. Nor does the law require that the judge rule for one side the same number of times that he rules for the other; the fact that the judge rules in favor of the prosecution more than for the defense tells us nothing, unless the rulings were erroneous. We turn, then, to 'the rulings in question.

██ Defendant claims that the judge erred when he allowed the prosecution to recall a witness after the witness was dismissed. Detective Loyd testified in the state's case-in-chief on December 7 and 11, 1989 and was dismissed following his testimony. Later, to avoid potential evidentiary problems, the state sought to recall Detective Loyd in its case-in-chief to identify a photograph of a pair of thongs found near the victim's body. Defendant objected, arguing that the state should not receive "two chances to kick the can." R.T., Dec. 13, 1989, at 120. The rules of evidence provide that the court must exercise reasonable control over the mode and order of interrogating witnesses and order of presenting evidence. Rule 611(a), Ariz. R.Evid., 17A A.R.S. Thus, the judge was within his discretion in allowing the prosecution to recall a witness. *State v. Archer*, 124 Ariz. 291, 293, 603 P.2d 918, 920 (Ct. App.1979). We find nothing to indicate that the judge erred, let alone abused his discretion.

██ Defendant next asserts that the judge violated A.R.S. § 13–703(C) when he allowed the coroner to repeat his trial testimony at the aggravation-mitigation hearing. Although Defendant did not identify which portion of the coroner's testimony was repeated, we assume from the sentencing hearing transcripts that Defendant is referring to the coroner's testimony that he did not find any evidence of a gunshot wound. That testimony was made in response to Defendant's question of why the coroner did not take an X-ray of the victim's body. The coroner did not elaborate on why he thought the hole in the victim's lower chest area was not caused by gunshot at trial. The coroner explained his rationale at the sentencing hearing only. Thus, the coroner did not repeat his trial testimony.

██ Even assuming, *arguendo*, that the coroner's testimony was repeated, § 13–703(C) does not prohibit the reintroduction of admitted evidence at the sentencing hearing. The statute states, "Evidence admitted at the trial, relating to such aggravating or mitigating circumstances, shall be considered without reintroducing it at the sentencing proceeding." This provision simply means that the judge shall consider the evidence admitted at trial for sentencing purposes, even if it is not reintroduced at the sentencing hearing. It does not mean that the judge is without discretion to allow either party to reintroduce, amplify, or explain evidence when he or she believes it will serve the interests of justice. Our conclusion is based on the premise that the sentencing authority must conduct an adequate investigation into all facts necessary for an intelligent exercise of the court's sentencing power, *see State v. Grier*, 146 Ariz. 511, 515, 707 P.2d 309, 313 (1985), and give careful consideration to all relevant information when deciding whether to impose the death penalty; *see Richmond v. Cardwell*, 450 F.Supp. 519, 521 (D.Ariz.1978). In the present case, the judge needed to hear the coroner's testimony to be well-informed, even if it was repeated, because the judge stated that he could not "remember in detail all of the testimony of the, I believe[,] 14 days of trial" when he allowed the coroner to testify. R.T., April 26, 1990, at 22. The judge's care is to be commended; there was no abuse of discretion.

Defendant next argues that he did not have the opportunity to rebut the coroner's testimony at sentencing. We disagree. Defendant was able to cross-examine the

coroner at the sentencing hearing. Additionally, Defendant had from April 26, 1990, the day the coroner testified, to June 5, the day the hearing ended, to call rebuttal witnesses. Thus, Defendant had ample opportunity to rebut the coroner's testimony at sentencing.

 Defendant also argues that the judge should not have allowed two prosecution witnesses to testify in areas not disclosed during discovery. In the first instance, the prosecution called the victim's roommate to testify about an argument he witnessed between the victim and Defendant two weeks before the victim died. The prosecution, however, did not disclose this testimony to the defense within the prescribed time period imposed by Rule 15.1. The judge admitted the roommate's testimony over Defendant's objection. Imposing sanctions for non-disclosure is a matter to be resolved in the sound discretion of the trial judge, and that decision should not be disturbed absent a clear abuse of discretion. *State v. Martinez–Villareal*, 145 Ariz. 441, 448, 702 P.2d 670, 677, *cert. denied*, 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985); *State v. Lukezic*, 143 Ariz. 60, 69, 691 P.2d 1088, 1097 (1984); *see also* Rule 15.7(a) (court may impose any sanction it finds just under the circumstances). The judge chose to protect Defendant's right to a fair trial (and perhaps teach the prosecution a lesson) by allowing Defendant to postpone his cross-examination of the roommate by four days. We do not see, and the defense does not claim, that the judge's decision was anything but a reasonable method of handling the problem.

 In the second instance, the prosecution called Richard Erfert, a crime scene expert specializing in fingerprints, to testify about the frequency that plaster casts have been taken during his investigations of crime scenes to combat Defendant's claim that plaster casts of the shoeprints should have been taken. Defendant argues that the judge misinterpreted Rule 15.1(a)(3) when he allowed the introduction of Erfert's testimony because the prosecution only disclosed Erfert as a fingerprint expert and not a plaster cast expert. Rule 15.1(a)(3) states that "[t]he names and addresses of experts *who have personally examined* a defendant or any evidence in the particular case, together with the results" shall be made available to the defendant. (emphasis added.) In this case, however, Erfert did not personally examine the crime scene for shoeprints, nor was there any claim that he is an expert in this area. The prosecution merely offered Erfert to testify empirically as to the number of times he has observed others taking a plaster cast. Therefore, on the subject in question, Erfert was not an expert within the meaning of Rule 15.1(a)(3), and the judge properly allowed Erfert's testimony.

 Defendant next asserts that the judge erred when he did not allow the defense to impeach Detective Lent through another witness. Detective Lent testified that in his experience in tracking, his testimony had never been disproved. Defendant wanted to impeach Lent by calling another detective to testify that Lent's testimony had been disproved in another homicide investigation. The judge would not allow the use of extrinsic evidence to impeach a collateral matter. The judge was correct. It is well settled that when impeaching a witness regarding an inconsistent fact collateral to the trial issues, the impeaching party is bound by the witness' answer and cannot produce extrinsic evidence to contradict the witness. *See, e.g., Public Serv. Co. v. Bleak*, 134 Ariz. 311, 323, 656 P.2d 600, 612 (1982); *State v. McGuire*, 113 Ariz. 372, 373, 555 P.2d 330, 331 (1976); *see also* 1 Morris K. Udall et al., Arizona Practice: Law of Evidence § 44 (3d ed. 1991) (hereinafter "Law of Evidence"); Rule 608(b), Ariz.R.Evid., 17A A.R.S. (attacks on witness' credibility based on specific instance of conduct, other than conviction of crime, may not be proved by extrinsic evidence). Evidence is collateral if it could not properly be offered for any purpose independent of the contradiction. *McGuire*, 113 Ariz. at 373, 555 P.2d at 331. In this case, the detective's testimony would have been relevant only to contradict Detective Lent's testimony re-

garding his tracking record. Thus, the judge properly excluded the collateral testimony.

■ Finally, Defendant claims that the judge erred when he would not allow Defendant to impeach the testimony of Detective Lent by using the transcript of another proceeding. At trial, Defendant asked Detective Lent whether he had admitted to being untruthful while under oath on another occasion. Detective Lent answered that he admitted that he made mistakes. Defendant then wanted to prove that Detective Lent admitted to more than a mistake by offering a transcript of proceedings in another case. The judge would not allow the transcript to be read into evidence. Again, the judge properly excluded extrinsic evidence on a collateral matter, the sole purpose of which was to contradict Detective Lent's testimony.

Examining the ten cited instances separately, we find no error. Taken in the aggregate, they do not show that the judge was biased or prejudiced. We do not find the judge biased because he correctly ruled against Defendant on numerous evidentiary issues.

## II. Sentencing Issues

■ When the trial court imposes the death penalty, we must independently review the record to determine whether the death sentence is appropriate. *State v. Cook,* 170 Ariz. 40, 60, 821 P.2d 731, 751 (1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 137, 121 L.Ed.2d 90 (1992). Thus, we review the sentencing hearing and aggravating and mitigating circumstances to ensure that proper procedures were followed and the proper factors determined and weighed. *Id.*

### A. Change of Judge for Cause

Prior to the sentencing hearing, Defendant requested a change of judge for cause pursuant to Rule 10.1(b) and (c). He claims the trial judge erred when he denied the motion due to its untimeliness. We disagree but confine our discussion to the merits of the motion, which Defendant also raises, to address possible fundamental error. *See Arizona v. Fulminante,* 499 U.S.

279, ——, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991) (partial judge is structural defect in trial mechanism and not subject to harmless error analysis) (citing *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)).

■ Defendant argues that even if his change of judge motion was untimely, the presiding judge of a superior court can never be a sentencing judge in a capital case. Defendant notes that, as part of the presiding judge's administrative duties under Title 12, A.R.S. and Rule I, Uniform Rules of Practice of the Superior Court, the presiding judge must appoint a chief probation officer who, in turn, appoints deputy officers and support staff. *See* A.R.S. § 12–251(A). The deputy officers and staff provide presentence investigations for use by the sentencing judge. *Id.* In his motion to disqualify for cause, Defendant argued that a presiding judge's administrative duties thus create an inherent conflict because the sentencing judge must consider only aggravating factors proven beyond reasonable doubt by the state at the sentencing hearing. Presumably Defendant is arguing that the presiding judge might give the presentence report prepared by his appointees undue evidentiary weight.

Both the Arizona and United States Constitutions guarantee the right to an impartial judge, free of bias and prejudice, within the right to a fair trial. *See State v. Mincey,* 141 Ariz. 425, 442, 687 P.2d 1180, 1197, *cert. denied,* 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984); *see also* Rule 10.1(a) (providing that prior to commencement of a hearing, a defendant is entitled to a change of judge "if a fair and impartial hearing . . . cannot be had by reason of the interest or prejudice of the assigned judge"); A.R.S. § 12–409(B) (grounds for change of judge include party's inability to obtain fair and impartial trial because of bias, prejudice, or interest of judge). Defendant apparently urges us to adopt a *per se* rule that presiding judges can never be free from interest in sentencing, and therefore defendants can never obtain a fair and impartial sentencing hearing from a presiding judge. We decline to adopt such a rule.

In *State v. Watkins*, 125 Ariz. 570, 611 P.2d 923 (1980), we addressed a presiding judge's responsibilities to assign cases. In *Watkins*, the presiding judge had been successfully challenged for cause but exercised his administrative duty to reassign the case to another judge. We held that performance of this ministerial duty created no actual or apparent impropriety. *Id.* at 575, 611 P.2d at 928.

Similarly, in this case, we see no inherent conflict between a presiding judge's administrative duties to supervise the probation department and his judicial duties to hold a fair and impartial sentencing hearing. We see no inherent reason for a presiding judge to give greater consideration to presentence reports simply because he oversees the probation department. Nor do we believe that probation officers necessarily will alter, consciously or otherwise, their reports for the presiding judge merely because he or she happens to supervise their department. We believe defendants can adequately attack *actual* conflicts arising in sentencing either by timely seeking a change of judge or challenging the presentence report.

## B. Aggravation–Mitigation Issues

Pursuant to A.R.S. § 13–703(B), the trial judge held an aggravation-mitigation hearing and returned a special verdict pursuant to A.R.S. § 13–703(D). He found the following aggravating circumstances: (1) Defendant was previously convicted of a felony in the United States involving the use or threat of violence, (2) the murder was especially cruel, heinous, or depraved, and (3) Defendant committed the murder in expectation of pecuniary gain. The trial judge also found one statutory mitigating circumstance: Defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the

law was significantly impaired by alcohol abuse. The judge then found that the aggravating circumstances outweighed the mitigating factors and sentenced Defendant to death.

### 1. Aggravating Circumstances

#### a. Previous Felony Conviction Involving Violence Under A.R.S. § 13–703(F)(2)

After trial, Defendant admitted to having pleaded guilty in Colorado in May 1971 to assault with a deadly weapon. R.T., Dec. 29, 1989, at 76. He now argues, however, that the state did not prove his conviction involved the use or threat of violence on another person, which is necessary to establish an aggravating circumstance under A.R.S. § 13–703(F)(2). Defendant argues that the state failed to introduce sufficient evidence that the pertinent Colorado law in effect at the time of Defendant's conviction inherently involved violence or the threat of violence. We disagree.

In order to constitute an aggravating circumstance under § 13–703(F)(2), the felony for which the defendant was previously convicted must, *by statutory definition*, involve violence or the threat of violence. *State v. Romanosky*, 162 Ariz. 217, 227–28, 782 P.2d 693, 703–04 (1989); *State v. Gillies*, 135 Ariz. 500, 511, 662 P.2d 1007, 1018 (1983). Thus we examine only the pertinent Colorado statutory definition of assault with a deadly weapon to determine whether the state proved an aggravating factor under § 13–703(F)(2).[5]

In this case, the state introduced evidence of the Colorado information charging Defendant with assault with a deadly weapon under Colo.Rev.Stat. § 40–2–34 (1963), as well as the judgment and sentence convicting him of that charge.[6] Ex-

---

5. Although a defendant may not offer extrinsic evidence to rebut evidence of a § 13–703(F)(2) aggravating circumstance, such extrinsic evidence, of course, may qualify as a mitigating circumstance under § 13–703(G). *See Romanosky*, 162 Ariz. at 228 n. 9, 782 P.2d at 704 n. 9.

At the sentencing hearing, Defendant presented evidence that, he argues, demonstrates that

the facts involved in his prior conviction did not involve violence or the threat of violence. He only argues on appeal, however, that such facts are relevant to the aggravating circumstance finding. They are not. *Id.*

6. Colo.Rev.Stat. § 40–2–34 (1963) provides in pertinent part:

hibits 91, 92. We believe the applicable Colorado statutes plainly define assault with a deadly weapon as a felony involving the use or threat of violence. Under Colo. Rev.Stat. § 40–2–33, assault combines an unlawful attempt with a present ability to commit a violent injury on another person. Under Colo.Rev.Stat. § 40–2–34, assault with a deadly weapon is a felony requiring an intent to commit bodily injury on another person. Thus, the trial court did not err in finding that the state proved beyond a reasonable doubt that Defendant's previous Colorado conviction was a felony involving the use or threat of violence on another person under A.R.S. § 13–703(F)(2).

### b. *Especially Cruel, Heinous, or Depraved Under A.R.S. § 13–703(F)(6)*

■■■ Defendant next argues that the trial court erred in finding that the murder was especially cruel, heinous, or depraved as an aggravating factor under A.R.S. § 13–703(F)(6). Under the Arizona statute, the terms "cruel, heinous or depraved" are disjunctive; therefore, the finding of any one establishes the § 13–703(F)(6) aggravating circumstance. *State v. Amaya–Ruiz*, 166 Ariz. 152, 177, 800 P.2d 1260, 1275 (1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2044, 114 L.Ed.2d 129 (1991). " 'To support a finding of cruelty, the state must prove beyond a reasonable doubt that the victim was conscious and suffered pain or distress at the time of the offense.' " *Cook*, 170 Ariz. at 60, 821 P.2d at 751 (quoting *State v. Jimenez*, 165 Ariz. 444, 453, 799 P.2d 785, 794 (1990)). The state's coroner and Defendant's pathologist testified that smoke in the victim's trachea demonstrates that the victim was alive during the fire. Evidence also showed that the victim thrashed about, possibly attempting to get up to escape the fire. We agree with the trial court that this is sufficient to establish that the victim was conscious and quite

obviously suffered tremendous pain from Defendant setting him on fire.

Having agreed with the trial court's finding of cruelty, we need not address its finding of heinousness or depravity because the terms are disjunctive. *See Amaya–Ruiz*, 166 Ariz. at 177, 800 P.2d at 1275. We believe that the trial court did not err in finding that the murder was especially cruel, heinous, or depraved under § 13–703(F)(6).

### c. *Pecuniary Gain Under A.R.S. § 13–703(F)(5)*

■■■ Defendant argues that the trial court erred in finding as an aggravating circumstance that Defendant committed the murder for pecuniary gain. Pecuniary gain must be the motive for the murder, not merely the result of the killing, to qualify as an aggravating circumstance under A.R.S. § 13–703(F)(5). *State v. Rockwell*, 161 Ariz. 5, 14, 775 P.2d 1069, 1078 (1989); *State v. Nash*, 143 Ariz. 392, 405, 694 P.2d 222, 235, *cert. denied*, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). Defendant argues that, from the evidence presented, the state did not prove this aggravating circumstance beyond a reasonable doubt. Again, we disagree.

The evidence at trial showed that (1) the victim's wallet was discovered on the body with no money, (2) Defendant was arrested with over $200 and the victim's grocery receipt in his wallet, (3) approximately two weeks before the murder, Defendant and the victim had a heated argument over money that the victim allegedly owed Defendant for work around the house, (4) Defendant had no steady source of income, and (5) Defendant had an expensive drinking habit. We believe this evidence taken as a whole is sufficient evidence to permit the inference, beyond a reasonable doubt, that Defendant murdered the victim to ob-

---

An assault with a deadly weapon, instrument or other thing, with an intent to commit upon the person of another a bodily injury where no considerable provocation appears or where the circumstances of the assault show an abandoned and malignant heart, shall be adjudged to be a felony....

Colo.Rev.Stat. § 40–2–33 (1963) defines assault as "an unlawful attempt coupled with a present ability to commit a violent injury on the person of another."

tain the money that he needed and that he believed the victim owed him. The trial court did not err in finding the aggravating circumstance of pecuniary gain under § 13–703(F)(5). *See Rockwell,* 161 Ariz. at 14, 775 P.2d at 1078.

### 2. *Mitigating Circumstances*
#### a. *Exclusion of Hearsay Evidence at Sentencing Hearing*

■ Defendant next argues that the trial court erred in excluding hearsay evidence of mitigating factors at the sentencing hearing. A.R.S. § 13–703(C) provides that "[a]ny information relevant to any mitigating circumstances ... may be presented by either the prosecution or the defendant, regardless of its admissibility under the rules governing admission of evidence at criminal trials." Defendant argues that the trial court improperly excluded testimony from a defense investigator and that this error was fundamental in preventing the court from considering all mitigating factors prior to sentencing. We disagree.

Defendant called a Mohave County Public Defender's Office investigator to testify regarding his interview with a witness. The investigator testified to the witness' statements that Defendant received $500 from his father in March 1989, approximately three months before the murder. R.T., May 15, 1990, at 137–38. Defense counsel then asked the investigator, "Now, even after that particular date, had [the witness] at times paid David Hill money to do work for her?" R.T., May 15, 1990, at 138. The trial court then sustained the prosecutor's hearsay objection.

The trial court arguably erred in excluding potentially mitigating information. Defense counsel, however, failed to make an offer of proof after the objection. "When an objection to the introduction of evidence is sustained, in order to assert error on appeal it is ordinarily necessary to make an offer of proof." Law of Evidence § 13, at 20 (footnote omitted). One purpose of this rule is to enable an appellate court "to determine whether any error was harmful in the context of the case." *Id.* at 21. Rule 103(a)(2), Ariz.R.Evid., provides:

Error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and ... the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

*See* Ariz. Const. art. 6, § 27; *Jones v. Pak-Mor Mfg. Co.,* 145 Ariz. 121, 129, 700 P.2d 819, 827, *cert. denied,* 474 U.S. 948, 106 S.Ct. 314, 88 L.Ed.2d 295 (1985).

In this case, we cannot know what the proffered testimony would have shown—whether and when the witness had paid Defendant and, if so, in any significant amount. We cannot speculate from the record that such testimony would have been significant or favorable to Defendant and therefore cannot reverse the trial court's ruling. *See Jones,* 145 Ariz. at 130–31, 700 P.2d at 828–29; *Musgrave v. Karis,* 63 Ariz. 417, 419, 163 P.2d 278, 279 (1945).

#### b. *Trial Court's Consideration of all Mitigating Evidence*

■ Defendant next argues that the trial court erred in not listing, discussing, and rejecting possible mitigating circumstances other than the one it found under A.R.S. § 13–703(G)(1). Defendant argues that he offered evidence of the following, each of which may be a mitigating circumstance: his good conduct in prison, his potential for rehabilitation, his background and emotional character stemming from his Vietnam experience, the plea agreement offered by the state, and his *mens rea* (*i.e.,* that the state offered no evidence proving that Defendant intended to kill the victim). Defendant quotes *State v. Leslie,* 147 Ariz. 38, 50, 708 P.2d 719, 731 (1985), in stating, "if [this court] cannot determine from the record whether the trial court considered all the relevant mitigating factors, the federal constitution compels us to remand the case for further explanation." He argues that, because the trial court failed to list or discuss any of these proffered factors, this court cannot determine from the record that it considered them. *See Sochor v. Florida,* — U.S. —, —, 112 S.Ct. 2114, 2122–23, 119 L.Ed.2d 326 (1992) (if

United States Supreme Court cannot determine, from language of opinion, that state appellate court conducted harmless error analysis, Supreme Court will not presume that error by the trial court in finding existence of aggravating circumstance was cured by appellate consideration).

■ While we continue to believe that trial judges should discuss all factors considered in mitigation, "we have never required a sentencing judge to make detailed, exhaustive findings or cite every claim or nuance advanced by defendant or his counsel in argument." *State v. McCall*, 160 Ariz. 119, 125, 770 P.2d 1165, 1171 (1989), *cert. denied*, 497 U.S. 1031, 110 S.Ct. 3289, 111 L.Ed.2d 798 (1990). We believe the record shows that the trial judge adequately identified and considered the primary mitigating circumstance raised by the evidence in this case—that Defendant's "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired," in this case by years of alcohol abuse.[7] A.R.S. § 13–703(G)(1). We believe that, in this case, questions regarding other mitigating factors were insubstantial and did not warrant additional discussion. In fact, defense counsel made no argument regarding other such factors in his closing arguments. Thus, we find that the trial court did enumerate and discuss in the special verdict the relevant mitigating factor raised by the evidence and argued by Defendant.

3. *Independent Review of Aggrava-*
 *tion–Mitigation Findings*

■ This court independently reviews the facts that establish the presence of aggravating and mitigating circumstances. *State v. White*, 168 Ariz. 500, 510, 815 P.2d 869, 879 (1991) (citing *State v. Richmond*, 136 Ariz. 312, 320, 666 P.2d 57, 65, *cert. denied*, 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983)), *cert. denied*, —— U.S. ——, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992). We have reviewed the record for evidence of additional mitigating factors. We agree with the trial court that the state proved the existence of the previously discussed aggravating circumstances beyond a reasonable doubt. We also agree that the only statutory mitigating circumstance sufficiently supported by the evidence is that Defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired. We find no additional non-statutory mitigating factor that would warrant leniency. We believe the trial court correctly concluded that the aggravating factors outweigh the mitigating circumstances, and therefore properly imposed the death penalty.[8]

**CONCLUSION**

We have examined the record for fundamental error pursuant to A.R.S. § 13–4035 and have found none. For the reasons noted above, we affirm Defendant's conviction and sentence.

MOELLER, V.C.J., CORCORAN, J., and CAMERON and GORDON, JJ. (retired), concur.

---

7. In finding a mitigating circumstance under § 13–703(G)(1), the trial court stated the following:

 The Court finds that you are an alcoholic, that you were most likely under the influence of alcoholic beverages to some extent at the time of the murder, that you are a product of an alcoholic family; whether the fact that your father was an alcoholic, whether that genetically or societally caused you to become an alcoholic, I don't know.

 R.T., June 5, 1990, at 50.

8. A majority of this court has determined that neither law nor reason requires us to conduct a comparative proportionality review in capital cases. *See State v. Salazar*, 173 Ariz. 399, 415–418, 844 P.2d 566, 582–85 (1992) (adopting Justice Corcoran's rationale in *White*, 168 Ariz. at 517–24, 815 P.2d at 886–93 (Corcoran, J., specially concurring). *But see Salazar*, 173 Ariz. at 418–420, 844 P.2d at 585–87 (Feldman, C.J., specially concurring); *White*, 168 Ariz. at 525–26, 815 P.2d at 895–96 (Feldman, V.C.J., specially concurring). Consequently, we have not conducted a proportionality review in this case.