NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

FILBERTO GIRON, *Appellant*.

No. 1 CA-CR 13-0360
FILED 3-31-2015

Appeal from the Superior Court in Maricopa County
No. CR2012-126886-001
The Honorable Cynthia Bailey, Judge

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Robert A. Walsh
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Margaret M. Green
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Jon W. Thompson joined.

**P O R T L E Y**, Judge:

¶1          Defendant Filberto Giron appeals his convictions for molestation of a child, sexual conduct with a minor, and kidnapping.  He challenges the trial court's admission of blind expert testimony regarding child victims' reactions to sexual abuse.  He also contends the prosecutor engaged in misconduct during closing arguments.  Finally, he argues the court erred in directing him to pay for DNA testing.  For the following reasons, we affirm Giron's convictions and sentences, but modify the sentences by vacating the order that he pay the DNA testing fee.

**BACKGROUND**

¶2          Giron and his girlfriend, N.B., had been living together, with their two daughters and N.B.'s five daughters from previous relationships.  One of N.B's daughters is the victim in this case.

¶3          In 2010, the then four-year-old victim told N.B. that Giron "had touched her."  N.B. and Giron transported the victim to a local hospital where she was physically examined.  Although N.B. declined to allow her child to be examined for rape, four days later she took the victim to the Child Help Children's Advocacy Center ("Child Help") at the request of a detective.

¶4          During a forensic interview conducted at Child Help, the victim was reluctant to discuss the inappropriate touching because N.B. had told her not to "tell," and that she, N.B., would go to jail if the victim told anyone about the incident.  The victim eventually disclosed to the interviewer that Giron had touched her sexually.  However, because there was a lack of physical evidence, no further investigation ensued.  The victim continued to reside with her mother and Giron.

¶5          On May 21, 2012, N.B. called home from work and asked the victim whether "anybody tried to touch" her.  The victim hesitated before telling N.B. "something about [Giron]."  N.B. returned home and took the victim to the hospital.  Police officers subsequently arrived and escorted the

victim and N.B. to Child Help where the victim was again physically examined and interviewed. The victim explained during the interview that Giron had anally penetrated her with his penis in the bathroom. The victim further explained that she tried to scream and get away during the incident, but he covered her mouth and restrained her by gripping her arms. The physical examination revealed the victim's anus had localized swelling, and male DNA was discovered in epithelial cells around the victim's external genitalia and anal area. Although a detective instructed her not to do so, N.B. spoke with Giron about the victim's allegations before the detective could initiate a confrontation call.

¶6　　　Based on the 2010 and 2012 incidents, the State charged Giron with molestation of a child, sexual conduct with a minor, and kidnapping, all dangerous crimes against children. At trial, the victim testified that she did not recall the incidents, and she denied Giron had ever sexually abused her. N.B. testified that the victim "is constantly lying to me" and "[s]he sticks to her lies." N.B. also testified the victim "is a very sneaky little girl." Giron testified on his own behalf and denied the allegations. Two of N.B.'s other daughters also testified in support of Giron.

¶7　　　Without objection, Dr. Wendy Dutton testified for the State as a "blind expert," meaning she had no information about the facts of the case. Dutton described the general behavioral traits of child victims of alleged sexual abuse based on research in the field and her own extensive experience as a forensic interviewer.

¶8　　　In the State's rebuttal closing argument, the prosecutor stated "it happens all the time" in reference to child sex abuse victims' family members wanting to "handle it themselves" without involvement of the State. Giron did not object to this statement.

¶9　　　The jury found Giron guilty of the charged offenses, and he was subsequently sentenced to consecutive prison sentences. Giron was also ordered to pay for DNA testing. Giron appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).[1]

---

[1] We cite to the current version of a statute unless otherwise noted.

**DISCUSSION**

## I.    Expert Testimony

¶10         Giron does not challenge Dutton's qualifications to testify as an expert in child sexual abuse cases. Instead, he argues the court committed fundamental prejudicial error by permitting Dutton to testify because "[h]er testimony was so broad that it was useless." In support of his argument, Defendant points to examples of Dutton's testimony where she explained that child victims of sexual crimes may immediately disclose the abuse or delay the disclosure, and that victims may have positive feelings for the alleged perpetrator whether the abuse actually occurred or not. Thus, according to Giron, Dutton's "testimony formed a basis for the prosecutor to argue that *any* behavior displayed by a child who alleged sexual abuse was, in fact, consistent with being abused."

¶11         To obtain relief under fundamental error review, Giron has the burden to show that error occurred, the error was fundamental and he was prejudiced thereby. *See State v. Henderson*, 210 Ariz. 561, 567-68, ¶¶ 20-22, 115 P.3d 601, 607-08 (2005). "Before we may engage in a fundamental error analysis, however, we must first find that the trial court committed some error." *State v. Lavers*, 168 Ariz. 376, 385, 814 P.2d 333, 342, (1991).

¶12         Arizona Rule of Evidence ("Rule") 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]

Ariz. R. Evid. 702(a).

¶13         Here, Dutton did not have any knowledge regarding the victim or the circumstances of the allegations. And we agree that Dutton testified that almost any behavior could be consistent with being a child sexual abuse victim, but Giron's assertion explains precisely why the testimony was relevant. The State offered Dutton's testimony to dispel common misconceptions that child sexual abuse victims will always act or respond to the abuse in the same manner. Testimony about general social and behavioral science principles is admissible to "assist the jury in

deciding a contested issue, including issues pertaining to accuracy or credibility of a witness' recollection or testimony." *State v. Lindsey*, 149 Ariz. 472, 473, 720 P.2d 73, 74 (1986).

**¶14** In this case, the jury had to resolve the credibility of the victim, especially at trial when she testified that nothing happened, along with her mother's interference with the investigations of the alleged sexual incidents by Giron. Dutton testified that child victims may have difficulty recalling details of abuse incidents because they may dissociate themselves from the sexual acts as the abuse is occurring. Dutton also testified that "if the child is feeling pressure from family members to keep the family together," the child "may be reluctant to talk about what happened."

**¶15** Based on the totality of the trial evidence, we conclude that Dutton's testimony was properly admitted and likely helpful for the jury to properly understand the victim's testimony and evaluate her credibility at trial. Accordingly, Dutton's expert testimony satisfied Rule 702(a), and the court did not err by not sua sponte precluding the testimony. *See State v. Salazar-Mercado*, 234 Ariz. 590, 594, ¶ 15, 325 P.3d 996, 1000 (2014) (holding Dutton's "cold expert" testimony satisfied Rule 702(a) because it "might have helped the jury to understand possible reasons for the . . . inconsistent reporting").

**¶16** We also reject Giron's apparent argument that Dutton's testimony was unfairly prejudicial under Rule 403. Pursuant to Rule 403, relevant evidence is subject to exclusion "if its probative value is substantially outweighed by the danger of . . . unfair prejudice [or] confusing the issues . . . ." Ariz. R. Evid. 403. "Evidence is unfairly prejudicial only when it has an undue tendency to suggest a decision on an improper basis such as emotion, sympathy or horror." *State v. Connor*, 215 Ariz. 553, 564, ¶ 39, 161 P.3d 596, 607 (App. 2007) (citation omitted). Dutton's blind expert testimony was not unfairly prejudicial under this standard, nor was it confusing. As explained, Dutton's testimony helped clarify for the jury why the victim either did not remember the sexual incidents with Giron or untruthfully denied that they occurred. Moreover, the trial court instructed the jury that it was not bound by any expert opinion and should give such an opinion only the weight the jurors believed it deserved. We presume the jury followed this instruction. *See State v. LeBlanc,* 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996). Consequently, Dutton's testimony was not unfairly prejudicial.

## II.   Prosecutorial Misconduct

¶17        Giron next argues the prosecutor improperly referred to facts not in evidence during closing arguments.  We review for fundamental error because Giron, as he concedes, did not object to the argument at trial.

¶18        In her rebuttal closing argument, the prosecutor argued:

> The State was presented with an investigation that was started by [N.B.].  She came forward to the hospitals, not to the police, and said, "I need my daughter checked out," on these two occasions.  And the hospitals did what they're required to do and what they should do: report to the police.

> Because these things happen every day, where mothers, sisters, family members report crimes, and then later feel bad about it and don't do anything further.  Or they don't want the State involved.

> They want to handle it themselves. And it doesn't — it might not make sense to you.  It might not make sense to you that if someone was in your home perpetrating on your child [sic] that you would want them back in the home.  *But it happens all the time*, and that's what's happening here.  (Emphasis added.)

¶19        Giron contends the statement "it happens all the time" was not supported by the evidence and amounted to fundamental error because it "explained away important defense testimony provided by [N.B.], the mother of the victim."  We disagree.

¶20        Although trial counsel are generally not permitted to refer to matters that are not in the record, they may argue all reasonable inferences from the evidence.  *State v. Hill*, 174 Ariz. 313, 322, 848 P.2d 1375, 1384 (1993); *State v. Bailey*, 132 Ariz. 472, 477, 647 P.2d 170, 175 (1982).  Here, the trial witness who forensically interviewed the victim in 2010 testified that the victim told her "she wasn't allowed to talk about" Giron's improper touching.  The witness further affirmed, that is "something [I have] encountered before in interviews."  Thus, in conjunction with the evidence that Giron continued living with the victim and N.B. after the 2010 incident,

the prosecutor could properly argue that, when sexual abuse occurs between family members, "it happens all the time" that other members of the family want the perpetrator "back in the home."

¶21      Furthermore, the challenged statement was made in response to defense counsel's following argument in closing:

> This is the question I want you to think about as you go through your deliberations. If this man was angrily raping this child, would his whole family really take the stand and want him back in the home? This is the girls' baby sister. Her older sister. It's her sister.
>
> So under the State's theory, they're all lying to get him to come home, because they'd rather have him home raping their little sister than not have him at home.
>
> What's the most logical answer? Stepdaughters don't want him to go away because it's never happened. [The victim] lied, and [Giron] is now here before you people on the jury hoping his nightmare is going to end.

¶22      The prosecutor could permissibly rebut this argument by exaggerating that "all the time" other family members want the perpetrator back in the home. *See State v. Jones*, 197 Ariz. 290, 305, ¶ 37, 4 P.3d 345, 360 (2000) ("[E]xcessive and emotional language is the bread and butter weapon of counsel's forensic arsenal, limited by the principle that attorneys are not permitted to introduce or comment upon evidence which has not previously been offered and placed before the jury.").

¶23      Finally, were we to conclude otherwise and determine the prosecutor's "all the time" comment amounted to misconduct, Giron nonetheless fails to persuade us that fundamental error occurred. To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974). "Reversal on the basis of prosecutorial misconduct requires that the conduct be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *State v. Atwood,* 171 Ariz. 576, 611, 832 P.2d 593, 628 (1992) (quoting *United States v. Weinstein,* 762 F.2d 1522, 1542 (11th Cir. 1985) (quoting *United States v.*

*Blevins,* 555 F.2d 1236, 1240 (5th Cir. 1977)); *see also State v. Lee,* 189 Ariz. 608, 616, 944 P.2d 1222, 1230 (1997).

¶24 Here, the prosecutor's limited statement after five days of evidence did not so infect the trial with unfairness as to deny Giron due process, nor did the statement permeate the trial's entire atmosphere. As a result, Giron has not satisfied his burden of establishing fundamental error.

### III. DNA Testing

¶25 Giron next contends that the court fundamentally erred by ordering him to pay for DNA testing pursuant to A.R.S. § 13–610. The State confesses error, relying in part on *State v. Reyes*, 232 Ariz. 468, 472, ¶ 14, 307 P.3d 35, 39 (App. 2013) where we held that § 13–610 does not authorize the court to impose a DNA collection fee on a convicted defendant. As a result, the court erred by imposing the collection fee. Consequently, we affirm Giron's sentence, but vacate the order that he pay a DNA testing fee.

### CONCLUSION

¶26 We affirm Giron's convictions and sentences, but modify the sentence by vacating the order that Giron has to pay the cost of DNA testing.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama